## HANS NEILSON V. J. B. JENSEN ET AL.

FILED OCTOBER 20, 1898. No. 8337.

1. **Libel: VERDICT FOR DEFENDANTS: EVIDENCE.** Evidence examined, and *held* not to sustain the verdict of the jury.

2. ———: **TRUTH OF PUBLICATION: EVIDENCE.** In a suit for libel, where the defense is the truth of the matter published, the defendant, to exonerate himself, must establish the truth of each libelous charge made and published.

3. ———: ———: **JUSTIFICATION.** A publisher may not exempt himself from liability for libeling another simply by showing that the charge published was true, but must go further and show that the publication was made under such circumstances as justify the conclusion that he acted with good motives and for justifiable ends. (Constitution, art. 1, sec. 5.)

ERROR from the district court of Dawes county. Tried below before BARTOW, J. *Reversed.*

*Thomas L. Redlon* and *D. J. Burrows,* for plaintiff in error.

*Albert W. Crites, contra.*

RAGAN, C.

In the district court of Dawes county Hans Neilson sued Peter Jensen and others for libel. Jensen and others had judgment, and Neilson has filed a petition in error here for its review. Neilson, in his petition, alleged that the defendants, wickedly intending to injure him, maliciously published of and concerning him in the *Northwest News*—a newspaper published at Hay Springs, Nebraska—the following false, scandalous, and defamatory libel:

"The people of Hay Springs and vicinity seemed very much surprised when it was announced that the plow and harrow stolen from C. F. Burrows on the 15th day of April were found in the possession of Hans Neilson. The discovery, however, was not so much of a surprise

Neilson v. Jensen.

to his neighbors. Indeed, it might never have been made
had it not been that some of his Danish neighbors, who
have known his habits for the past ten years, had de-
termined to show him up and bring to light a few facts
for the benefit of the public. He was addicted to 'taking
what didn't belong to him' when he lived in Crawford
county, Iowa. On one occasion he stole a load of wood,
but saved himself from exposure by paying the owner
the sum of $20. Another time he stole a rail belonging
to a railroad company and came near getting himself
into trouble again, but managed to worm out of that
scrape all right. After coming to Dawes county, Ne-
braska, he seemed to grow bolder, and increased his ne-
farious tricks considerably. The first year of his resi-
dence in this county a lot of fence wire was found on his
place, down in a cañon away from the house. This cir-
cumstance was looked upon with great suspicion at the
time, and he soon found that he could not work the ex-
pert thief business as well as he thought he could. The
statement made and sworn to by Hans Neilson, which
was published in the *Northwest News* on May 3, was ab-
solutely false in every respect, and we do not believe
that he would have been so foolish as to make such a
statement had he not been persuaded to do so by T. S.
Tripp, in order that the latter might earn his fee of
$2 thereby. The plow and harrow stolen from C. F. Bur-
rows on the 15th day of April were found on his place by
one of his neighbors, who at once notified the owner.
B. F. Carroll and H. Casselman came out to identify the
implements, which was an easy matter. The plow was
found under the straw stack, and the harrow was found
out in the field, where it had been used. C. F. Burrows
accordingly paid the reward which he had offered for
the discovery of the stolen implements, and P. F. Carroll
agreed to hush up the matter for a certain sum of money,
which Neilson paid. It was proved beyond doubt that
Hans Neilson was guilty of the theft, and we do not con-
sider that it was fair and just to settle the matter in that

way. Hans Neilson swore in his statement that he was not in the village of Hay Springs on the 15th of April,—the day that the implements were stolen,—but C. F. Burrows states that he saw him in town about 4 or 5 o'clock P. M. We know for a fact that Hans Neilson is a man who will swear to anything. He said that he did not uphold stealing; but how is it that missing tools and articles have repeatedly been found in the possession of his family? Hans Neilson has been suspected for years of being a regular thief, and he has now been caught at it. His neighbors, therefore, are of the opinion that he ought to be dealt with according to law and not be allowed to continue his thieving practices, which have furnished a very bad example to his children, who are now almost as bad as himself. The above assertions are perfectly true and can be proved. Now, Mr. Neilson, if you have any more affidavits to make, it is time for you to make them.          (Signed)          Peter Jensen," and the other persons made defendants.

As an answer to this petition Jensen and others interposed (1) a general denial, and (2) that all the statements made in the publication were true.

1. This judgment cannot stand. The evidence shows beyond all question that Jensen and others wrote out, circulated, signed this libel, and caused it to be published in the newspaper. If the verdict of the jury then is based upon its finding that the defendants did not publish this libel, it has no support whatever in the evidence.

2. It will be observed that in the libel the defendants charged Neilson (a) with having stolen a load of wood in the state of Iowa; (b) with having stolen some railroad iron in the state of Iowa; (c) with having stolen in Nebraska some fence wire; (d) with having committed perjury in a sworn statement made by him; (e) with having stolen a plow and harrow; (f) and generally, with being a thief and perjurer. If the verdict of the jury is based upon its finding that the defendants proved the truth of

each of these charges, then it is unsupported by the evidence. There is some evidence in the record which tends to show, and from which the jury might possibly have inferred, that Neilson stole the plow and harrow, but there was no evidence establishing the truth of the other charges. The evidence showing beyond dispute that the defendants published the libel, the burden was then upon them to show that each libelous charge made against Neilson was true.

3. There is one other thing which requires attention. While the defendants pleaded below that the charges published of and concerning Neilson were true, they neither pleaded nor proved that these charges were published with good motives and for justifiable ends. Of course, if the defendants did not publish or cause to be published the libel, that was a complete defense; but since the evidence shows that they did publish the libel, it would not have been a complete defense for them had they shown that the charges made were true. They would have had to go further and show that they were published with good motives and for justifiable ends. (Constitution, art. 1, sec. 5; *Pokrok Zapadu Publishing Co. v. Zizkorsky*, 42 Neb. 64.) In a civil case at common law the truth of a charge published was a defense to one who was sued for libel; but our constitution has changed this rule, and a publisher may not exempt himself from liability for libeling another simply by showing that the charge published was true, but must go further and show that the publication was made under such circumstances as would justify the conclusion that he acted with good motives and for justifiable ends. The framers of the constitution may have been of opinion that the peace, good order, and well being of the state would be best subserved if every citizen devoted at least a part of his time to attending to his own business instead of constituting himself an agent for bruiting abroad the short-comings of his neighbor; but whatever may have been their motives, the provision on the subject

32

of libel is part of the supreme law of the land. What motive induced the publication of a libel is of course a question of fact; and whether these motives warrant the conclusion that a publication was justifiable is probably for determination by the jury or other triers of fact. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.