# THOMAS F. B. SOTHAM v. DROVERS TELEGRAM COMPANY, Appellant.

### Division Two, February 6, 1912.

1. **APPEAL: Motions for New Trial and in Arrest: One Ruling: One Exception.** Where the record shows only one ruling of the trial court overruling appellant's motion for a new trial and his motion in arrest, one exception to such ruling is sufficient.

2. **———: Motions to Strike Out Parts of Petition or Answer: Not Preserved in Bill or Assigned in Motion for New Trial.** The action of the trial court in overruling defendant's motion to strike out the innuendoes contained in the petition in a libel suit, and in sustaining plaintiff's motion to strike out a part of defendant's answer, if neither of said motions is incorporated in the bill of exceptions or made a ground of the motion for a new trial, will not be reviewed on appeal.

3. **LIBEL: Definition.** Sec. 4818, R. S. 1909, defining libel, although a part of the Criminal Code, is applicable to civil cases.

4. **———: Pleading: Innuendo: When Other Allegations Necessary.** If the publication is not libelous *per se*, then not only is an allegation of an innuendo to show the defamatory sense in which the language was used necessary, but there must also be an allegation by way of inducement to support the meaning ascribed by the innuendo. The innuendo cannot be looked to for allegations of fact, but allegations essential to the statement of a cause of action, in addition to the publication, must appear by way of inducement or colloquium. But no allegation of either innuendo or inducement is necessary where the publication is libelous *per se*, as was the publication in this case.

5. **———: Publication Libelous per se.** The publication stated that plaintiff was making an address at a cattlemen's association on the subject, "Honesty is the Best Policy;" that in the midst of his address the sheriff appeared and "served him with a summons to answer a civil action, brought by Clem Graves to recover $10,000 damages arising from an alleged fraudulent cattle transaction;" and then proceeds to set forth the salient allegation of Graves's bill, and ends by saying a man, once respected and honored, lived in the town where plaintiff did, "who couldn't buy a bar of five-cent soap in the town to-day, without paying cash," and that plaintiff "likely had this offender

in mind while making his talk." *Held,* that the publication was libelous *per se.*

6. ———: **Evidence: Relevant Matters.** Where the publication states plaintiff had been served with a summons in an alleged fraudulent cattle transaction and that he had thereupon taken the benefit of the bankrupt law, and defendant alleges the truth of those statements, it is proper to permit plaintiff to prove the loss of the cattle by disease and to show that his bankruptcy was the result of causes beyond his control.

7. ———: ———: **Plaintiff's Standing: Specific Details.** Testimony of plaintiff's general standing, financially and socially, may be given in evidence in a libel suit, but he is not to be permitted to go into details of his life or prove specific instances upon that issue—for instance, where the publication charged plaintiff with having been sued upon an alleged fraudulent cattle transaction, testimony as to a testimonial sale of cattle given for his benefit by the citizens of the town where he formerly lived is incompetent. But in this case, such improper testimony is held not to have prejudiced defendant in its substantial rights on the merits.

8. ———: **Demurrer: Practice.** Where the publication was libelous *per se,* and much conflicting testimony was introduced upon the issues raised by the answer, the case should have gone to the jury, and the court did not err in overruling a demurrer to the evidence.

9. ———: **Instructions.** Where the instruction sets forth the alleged libel, and that is followed by the statutory definition of libel, and then tells the jury that if they believe and find from the evidence that the article falls within the definition so given, then the article is libelous under the statute, it complies with and follows the law of libel.

10. ———: ———: **Truth of Publication.** An instruction defining libel is not erroneous for that it ignores the issue of the truth of the publication as made by the answer. The statutory definition of libel does not make the falsity of the publication a part of the definition. Neither is it necessary for plaintiff to prove its falsity as a part of his case, for that is presumed.

11. ———: ———: **Justification: Every Charge.** It is proper in a libel suit to instruct the jury that it is incumbent upon defendant, under its plea of justification, to prove the truth of all the alleged statements in the publication, and that if it has failed to prove the truth of any one charge and such charge is libelous, then the verdict must be against such plea.

12. ———: ———: ———: Burden of Proof. Nor is the burden of proof, in such case, upon the plaintiff upon each issue submitted.

13. ———: Excessive Verdict: $10,000. There being no award of punitive damages, and nothing to show prejudice or passion on the part of the jury, the evidence is reviewed and it is *held* that a verdict for $10,000 in this case is too large by $4,000.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED (*conditionally*).

*Leslie J. Lyons* and *Scott J. Miller* for appellant.

(1) The court erred in overruling defendant's motion to strike out the innuendoes in plaintiff's amended petition. McGinnis v. Knapp & Co., 109 Mo. 139; 18 Am. & Eng. Ency. Law (2 Ed.), p. 974. There is no inducement or colloquium preceding the charge of publication of the article in question, which sets forth facts sufficient to warrant the innuendoes set out in plaintiff's petition. 13 Ency. Pl. & Pr. (2 Ed.), 32; Curry v. Collins, 37 Mo. 329; Dyer v. Morris, 4 Mo. 218; Wood v. Hilbish, 28 Mo. App. 389; Unterberger v. Scharff, 51 Mo. App. 110; Christal v. Craig, 80 Mo. 372. (2) The court erred in sustaining plaintiff's motion to strike out parts of the amended answer filed by the defendant. (3) The court should have sustained defendant's objection to the introduction of any evidence at the beginning of the trial because the petition does not state facts sufficient to constitute a cause of action. The article in question is not libelous per se. 18 Am. & Eng. Ency. Law, p. 1085; Rammell v. Otis, 60 Mo. 365; Herman v. Bradstreet, 19 Mo. App. 227; Birch v. Benton, 26 Mo. 155; Townshend on Slander & Libel (4 Ed.), p. 157; Odgers on Libel & Slander (2 Ed.), p. 86; Spurlock v. Investment Co., 59 Mo. App. 230; Baldwin v. Walser, 41 Mo. App. 251. (4) The court should not have per-

mitted plaintiff to introduce evidence as to the death of a number of cattle which plaintiff had been showing at the Charleston, S. C., Exposition in 1902. This testimony was clearly immaterial, and had nothing to do with the issues involved in the case, and was introduced for the sole purpose of arousing sympathy on the part of the jury for Mr. Sotham, and a specious excuse for his bankruptcy proceedings which were filed late in the fall of 1903. (5) The court. erred in permitting testimony to be introduced over the objection of defendant, as to the testimonial sale of cattle given by the citizens of Chillicothe for the plaintiff. Sanford v. Rowley, 93 Mich. 122; 2 Wigmore on Evidence, p. 1959. (6) The court erred in overruling defendant's demurrer in the form of a request for a peremptory instruction at the close of plaintiff's evidence. Plaintiff alleged no special damages, and proved none. In fact, the record shows from Mr. Sotham's own testimony, that his business was more extensive after the publication of this article than it was at any time while he lived at Chillicothe. Inasmuch, therefore, as the article is not libelous per se, it was absolutely essential that special damages must be averred and proved. Julian v. Kansas City Star, 209 Mo. 80. (8) Instruction 1, given at the request of plaintiff, is erroneous because it omits the element of falsity, and because defendant pleaded the truth of the article, and the falsity of it was one of the main issues of the case, and therefore the court in defining libel, should have stated as one of .the elements of libel that it must be false before it can be libelous. Stark v. Knapp, 160 Mo. 551; Townshend on Libel and Slander, (4 Ed), p. 213. (9) The court committed error in refusing to give defendant's instruction 3. This instruction requests the court to instruct the jury that plaintiff must prove his case by a preponderance of the evidence, and then defines what the

preponderance of the evidence is. This instruction is in the form approved by this court in many cases. Clements v. Maloney, 55 Mo. 357; Lewis v. McDaniel, 82 Mo. 584. (10) The verdict was the result of passion and prejudice, as shown by the excessive amount allowed.

*Henry L. Jost* and *Hunt C. Moore* for respondent.

(1) The bill of exceptions does not disclose a proper and sufficient exception on the part of the defendant to the court's action in overruling defendant's motion for a new trial. It made one single exception to two different actions of the court: The action of the court in overruling defendant's motion for a new trial and the court's action in overruling its motion in arrest of judgment. St. Joseph v. Ensworth, 65 Mo. 628; McKee v. Dry Goods Co., 132 S. W. (Mo. App.) 1191. (2) The action of the trial court in overruling defendant's motion to strike out the innuendoes in plaintiff's amended petition is not before this court and will not be reviewed, because it was not preserved by any bill of exceptions and no complaint is made of such action in defendant's motion for a new trial. Coffey v. Carthage, 200 Mo. 629; Smith v. Baer, 166 Mo. 401; Davidson v. Real Est. Co., 226 Mo. 36; Railroad v. Wyatt, 223 Mo. 357; Gardner v. Railroad, 223 Mo. 412. Moreover, defendant by answering waived any right to have the motion reviewed. Springfield Engine Co. v. Donovan, 147 Mo. 628; Kansas City ex rel. v. Surety Co., 196 Mo. 300; Brannock v. Railroad, 200 Mo. 567; Kansas City to use v. Yeoman, 213 Mo. 175. (3) The language of the article sued on is libelous per se. Section 4818, R. S. 1909. This statute sweeps down the rule, if it ever existed, which required a libel to charge a crime in order that it should be libelous per se. Any language which may fairly be said to result in

the things denounced by the statute is libelous per
se. Every libel is libelous per se. Ferguson v. Pub-
lishing Co., 72 Mo. App. 465; McGinnis v. Knapp, 109
Mo. 149; Morse v. Times Republican, 124 Iowa, 707.
The article sued on is libelous per se, because: (a)
It directly imputes to plaintiff fraudulent and dis-
honest conduct in his business as a cattle trader and
dealer and in respect to a certain cattle transaction
that he had with one Graves. Manget v. O'Neill, 51
Mo. App. 35; Pub. Co. v. Trade Journal, 108 Mo. App.
223; Farley v. Publishing Co., 113 Mo. App. 224; State
v. Armstrong, 106 Mo. 416; McGinnis v. Knapp, 109
Mo. 143; Sullivan v. Commission Co., 152 Mo. 268;
Townshend on Libel & Slander (4 Ed.), sec. 177;
Odgers on Slander & Libel (Bigelow's Ed.), 21; Noe-
inger v. Vogt, 88 Mo. 593. The defendant had no lawful
right to publish in its newspaper the charges of fraud
which Graves had made against plaintiff in his peti-
tion for damages, the petition having just been filed
and no action having been taken thereon by the court;
and in publishing those charges of fraud against plain-
tiff in its newspaper, defendant is answerable to plain-
tiff in damages unless defendant prove the charges
so made against plaintiff to be true. Barber v. Dis-
patch Co., 3 Mo. App. 377; Meriwether v. Knapp &
Co., 211 Mo. 219; Nixon v. Printing Co., 101 Minn.
309, 21 L. R. A. (N. S.) 188; Park v. Free Press Co., 72
Mich. 560, 1 L. R. A. 599; Am. Pub. Co. v. Gamble, 115
Tenn. 666; Cowley v. Pulsifer, 137 Mass. 392. (b) The
article is libelous per se because in addition to the
direct charge of fraud and dishonesty as above stated,
it makes the veiled charged that plaintiff was dis-
honest and deceitful in an insinuating and ironical
way. It is well settled that written language may be
libelous through the ironical and insinuating spirit
in which it is used. 18 Am. & Eng. Ency. Law (2
Ed.), 977; McGinnis v. Knapp, 109 Mo. 141; Merrill

v. Pub. Co., 197 Mass. 193; Buckstaff v. Viall, 84 Wis. 129; Bogdell v. Jones, 4 M. & W. 466. The mere headline of the article is libelous in the light of what follows. McGinnis v. Knapp, 109 Mo. 144; Hays v. Press Co., 127 Pa. St. 142. (c) The article is further libelous per se because it contained the veiled and insinuating imputation that plaintiff was acting the hypocrite while making the public address mentioned in the article. Newell on Slander & Libel (2 Ed.), 58. (d) The article is libelous per se because it directly charges that plaintiff was wholly destitute of credit and trust in Chillicothe where he formerly lived, honored and respected, and the last paragraph of the article, read in the light of the entire article, clearly and unmistakably insinuates and gives the reader to understand that plaintiff is a bad debtor and unworthy of credit. State v. Armstrong, 106 Mo. 415; Muetze v. Tutor, 77 Wis. 236; Davis v. Hamilton, 85 Minn. 209; Sanders v. Hall, 22 Tex. Civ. 282. To charge a person with a want of credit is libelous per se even though published of one as an individual, though not in respect to his business or trade. McDermott v. Union Credit Co., 76 Minn. 84. (e) The article read altogether is an ironical lampoon upon plaintiff. The necessary and inevitable consequences of the article were to provoke plaintiff to wrath, to expose him to public scorn, hatred, contempt and ridicule, and to deprive him of public confidence and social intercourse. It is sufficient to make the article libelous per se that its tendency is to produce any one of these results. McCloskey v. Publishing Co., 152 Mo. 339; Farley v. Publishing Co., 113 Mo. App. 216; Meriwether v. Publishing Co., 120 Mo. App. 354; McGinnis v. Knapp, 109 Mo. 131; Price v. Whiteley, 50 Mo. 439; Academy v. Gaisner, 125 Mo. 517; Manget v. O'Neill, 51 Mo. App. 35; Morse v. Printing Co., 124 Iowa, 517; McMurray v. Martin, 26 Mo. App. 437; Julian v. Star Co., 209 Mo. 35. (4) The article sued

on being libelous per se the court properly overruled the defendant's objection to the introduction of evidence under the petition, and properly overruled the demurrer to the evidence at the close of plaintiff's case, and properly refused the peremptory instruction asked at the close of the whole case. From the publication of written words which are actionable per se the law presumes damages. Brown v. Knapp & Co., 213 Mo. 696; Farley v. Publishing Co., 113 Mo. App. 225; Buckley v. Knapp, 48 Mo. 152; Doherty v. Lynett, 155 Fed. 681; 1 Jaggard on Torts, p. 493; 8 Ency. Evidence, p. 249. Falsity, malice and damage are all presumed. Prewitt v. Wilson, 128 Iowa 202; Candrian v. Miller, 98 Wis. 167. (5) The testimony showing plaintiff lost by death a number of fine, valuable cattle, and that this was one of the financial misfortunes that brought about his bankruptcy, was competent. State v. Meagher, 124 Mo. App. 337; Lumber Co. v. Rogers, 145 Mo. 455; Gale v. Car Co., 177 Mo. 427. (6) It was competent to show the pecuniary condition of plaintiff. The testimony that plaintiff received about $3500 in cash from the proceeds of a certain benefit sale of fine cattle, given in his behalf by his friends in Chillicothe, was competent, as being part of plaintiff's history and as showing the plaintiff's pecuniary condition. The source from which he obtained this money was also competent inasmuch as the evidence showed he obtained it after the filing of his petition in bankruptcy and while the bankruptcy proceedings were pending. Kennedy v. Holladay, 25 Mo. App. 511; Clements v. Maloney, 55 Mo. 359; Townshend on Slander & Libel (4 Ed.), sec. 391; Peltier v. Mict, 50 Ill. 512; Parker v. Pub. Co., 181 Mass. 392. Again, the record does not disclose that at the time the evidence was received defendant interposed any specific objection to the same. State v. Meagher, 124 Mo. App. 337. (7) Instruction 1 on the definition of libel, has been repeatedly approved by this court. McCloskey v. Publishing

Co., 152 Mo. 339; Julian v. Star Co., 209 Mo. 89. (8) Plaintiff's instruction 9 has been expressly approved. Meriwether v. Knapp & Co., 120 Mo. App. 385; 18 Am. & Eng. Ency. Law (2 Ed.), p. 231; Mertson v. Jensen, 56 Neb. 430; Morse v. Ptg. Co., 124 Iowa 720; Sanders v. Pub. Co., 94 N. Y. Supp. 993. (9) Plaintiff's instruction 10 on the measure of damages has been approved. Meriwether v. Knapp & Co., 120 Mo. App. 386. (10) The court properly refused defendant's instruction No. 3. Defendant having by its answer admitted the publication of the article and pleaded the truth thereof, the burden of proof was on defendant. Minter v. Bradstreet, 174 Mo. 488; State v. Hosmer, 85 Mo. 558; Newell on Slander & Libel (2 Ed.), pp. 707, 708, 794; 2 Greenleaf on Evidence (16 Ed.), sec. 423. (11) The verdict was not excessive. Brown v. Knapp & Co., 213 Mo. 696; Brown v. Printing Co., 213 Mo. 653; Julian v. Star Co., 209 Mo. 35; Meriwether v. Knapp & Co., 120 Mo. App. 354; Meriwether v. Knapp & Co., 224 Mo. 617.

KENNISH, J.—This action for libel was brought in the circuit court of Jackson county by respondent, Thomas F. B. Sotham, against the Drovers Telegram Company, a corporation, the owner and publisher of the "Daily Drovers Telegram," a Kansas City newspaper in which the alleged libelous article appeared. Upon a trial the jury returned a verdict in favor of plaintiff, awarding compensatory damages in the sum of ten thousand dollars, and the defendant appealed to this court. The pleadings are of too great length to be set out in this opinion and we shall state only the substance thereof.

The amended petition, on which the case was tried, was in one count, and alleged as inducement that plaintiff had been engaged in the business of breeding and dealing in Hereford cattle and fine stock,

and was widely known throughout the country in connection with such. business; that at the time of the publication of the alleged libel, and for three years immediately before that date, he was engaged in such business and resided at Kankakee, Illinois, but that for many years prior thereto he had resided at and was engaged in the same business at Chillicothe, this State. The petition then alleged the publication of the false, malicious and defamatory article of and concerning the plaintiff in defendant's said newspaper, on the 7th day of February, 1906, and set out the publication as follows:

### "HONESTY THE BEST POLICY.

"Thomas F. B. Sotham, formerly a prominent breeder of Hereford cattle at Chillicothe, Mo., but who became heavily involved and was forced into bankruptcy and who has since been in the background, came to life again last week. His appearance was scheduled at a meeting of the State Hereford Breeders' Association, in the State House in Indianapolis. He was called upon for a speech. His subject was 'Honesty is the Best Policy.' He had hardly warmed up in his remarks and proceeded along this line: 'In this business more than any other, honesty is the best policy. There is no other walk in life where strict integrity means so much, no other business where any departure from the most rigid probity is so apt to return upon the offender at an inopportune moment,' when a deputy sheriff served him with a summons to answer a civil action, brought by Clem Graves to recover $10,000 damages arising from an alleged fraudulent cattle transaction.

"Graves, who is prominently identified with the Hereford breeding industry, was present at the meeting. In his bill of complaint he alleges that in 1904 he advised Sotham to buy the E. B. Martindale herd of

Hereford cattle.    Sotham claimed that he was worth $100,000.    Sotham purchased the herd in question for $10,000 and Graves went his security.    Later Martindale learned that Sotham was heavily involved and was converting the cattle into cash.    He instituted attachment proceedings, but Sotham took advantage of the bankruptcy laws and his property is now being liquidated.    Graves further asserts that less than $2,000 has been paid to Martindale, and he is being held responsible for the $8,000 balance.    But Mr. Sotham meant what he said, and it was a wise statement just the same.

"A man once lived, honored and respected, in Chillicothe, who couldn't buy a bar of five-cent soap in the town to-day, without paying cash.    Mr. Sotham likely had this offender in mind while making his talk."

The alleged libel, as above set forth, is followed by a lengthy statement of innuendoes, ascribing certain libelous meanings thereto, but as the trial court treated the language as libelous *per se* on its face and so instructed the jury, in which view we concur, the innuendoes need not be noticed further.    The petition concluded with a prayer for damages for twenty-five thousand dollars as compensatory damages and a like sum as punitive damages.

The defendant filed an amended answer consist ing of seven separate defenses, viz.:    (1)    A general denial;    (2)    an admission of defendant's corporate existence, the ownership, publication and circulation of the newspaper, and that the article complained of appeared in the edition of the Daily Drovers Telegram on February 7, 1906, as stated in the petition, but denied that said article was libelous in any sense; (3)    that the matters and facts set forth in the article are true;    (4) a denial that the article as published is susceptible of the defamatory and libelous meaning ascribed thereto in the petition; that it was not

understood by the public as stated in the innuendoes, and denies that in consequence of the publication plaintiff was injured; (5) that the publication was an item of news concerning a suit filed against plaintiff in the State of Indiana, growing out of an alleged fraudulent sale of cattle, and that summons was served on plaintiff substantially as set forth in the published article, and that the article was an account of a public meeting and a matter of public interest; (6) matter in mitigation of damages; (7) that the plaintiff was and is guilty of fraudulent, dishonest and delinquent methods, acts and conduct in his business, and setting forth a number of specific instances thereof.

The reply was a general denial.

The court overruled a motion filed by the defendant to strike out the innuendoes of the petition, and sustained, in part, plaintiff's motion to strike out parts of the answer. Defendant saved exceptions to such adverse rulings, but, for reasons which will hereinafter appear, those motions and the court's rulings thereon need not be set out in this statement.

Plaintiff introduced testimony tending to prove the formal allegations of the petition, and also the publication in controversy, and rested. Defendant introduced a number of witnesses who testified that plaintiff's reputation for honesty and fair dealing, after the date of his bankruptcy, was bad, many of such witnesses being merchants and others in the neighborhood in which plaintiff then resided, to whom plaintiff was indebted when he failed and became a voluntary bankrupt. In rebuttal, a number of witnesses introduced by plaintiff testified that plaintiff's reputation, up to the time of the publication of the alleged libel, was good. A peremptory instruction was asked by the defendant at the close of the plaintiff's evidence, and again at the close of all the evidence, which, in each instance, the court refused.

Appellant assigns many errors for the reversal of the judgment. We will take them up in their order, after having first considered respondent's challenge as to the right of appellant to have any error which is matter of exception reviewed on this appeal.

I. The bill of exceptions recites that "the court overruled defendant's motion for a new trial and motion in arrest of judgment, to which action and ruling of the court defendant at the time and then and there duly excepted and still excepts." Respondent contends that the record thus shows but one exception to two independent rulings of the court, and that it is therefore insufficient and only the record proper is before this court for review.

We cannot assent to this contention. The record shows but one ruling of the court as to the two motions, and the exception being as broad as the ruling, appellant should not be precluded from the right to have matters of exception considered, merely because he did not save two exceptions to one ruling of the court. Respondent cites McKee v. Dry Goods Co., 152 Mo. App. 241, in support of his position, but that case differs in its facts, in that the record recital discloses separate decisions of the court, to which but one exception was saved. In the case of Kane v. Mo. Pac. Ry. Co., decided in this division and now pending in the court in Banc, the record was the same in its facts as the case now before us on the point in hand. FERRISS, J., there discusses the question at length, in the course of which it is said: "To say that when a court by one order overrules two motions, the exception must in terms divide this order, and except specifically to each dissevered member, is carrying technicality to an unreasonable extreme." We fully concur in the law as announced in the Kane case. It should be added that counsel for respondent, at the oral argument, frankly stated that although the point

was presented in his brief for the consideration of the court, he was not disposed to insist on it and thus seek to cut off a review of the case on its merits.

II. The errors assigned to the action of the court in overruling defendant's motion to strike out the innuendoes of the petition, and in sustaining in part plaintiff's motion to strike out parts of defendant's amended answer, may be disposed of together.

Neither of the said motions is incorporated in the bill of exceptions or made a ground of the motion for a new trial, and either of such facts, under the settled appellate procedure of this court, is sufficient to preclude a review of such alleged errors in this court.

III. Complaint is made that the court erred in overruling defendant's objection to the introduction of any evidence because the petition did not state facts sufficient to constitute a cause of action. The sufficiency of the petition was thus challenged, as also later in the trial by the defendant's demurrers to the evidence above referred to.

Section 4818, Revised Statutes 1909, defines libel, and although a part of the Criminal Code, it has been held applicable to civil cases.

Appellant's attack on the petition is based upon the assumption that the publication is not libelous *per se* on its face, and that extrinsic facts were essential to bring out its libelous meaning. Upon that theory appellant's reasoning is sound, for if an innuendo was necessary to show the defamatory sense in which the language was used, then the petition was defective in that there was no allegation by way of inducement to support the meaning ascribed by the innuendo. The law requires that the petition shall set forth the plaintiff's cause of action, and as the innuendo cannot be looked to for allegations of fact it follows that allegations essential to the statement

of a cause of. action, in addition to the publication, must appear by way of inducement or colloquium. This question of pleading is discussed at length, and authorities are cited, in the case of Cook v. Pulitzer Pub. Co., recently decided by this court but not yet reported.

Although conceding the correctness of appellant's argument, we must hold against it upon this point, for the reason that we think the publication, under the statutory definition, was plainly libelous *per se* on its face, and extrinsic facts as inducement or innuendo were unnecessary. In such case the innuendoes may be treated as surplusage and disregarded, as was done by the trial court. [Hudson v. Garner, 22 Mo. 423; Callahan v. Ingram, 122 Mo. 355.]

IV. Appellant complains that the court erred in allowing the plaintiff to prove, as a contributing cause of his bankruptcy, the loss of a number of fine cattle by disease. The article complained of stated that plaintiff was served with a summons in an alleged fraudulent cattle transaction and that he had taken advantage of the bankruptcy laws, etc. The defendant alleged the truth of the publication, and plaintiff replied by a general denial. Under the issues thus framed we think it was competent for plaintiff to show that his bankruptcy was the result of causes beyond his control and was not resorted to for the purpose of defrauding his creditors. We therefore hold that the evidence was competent.

V. One of the most difficult questions raised by appellant is that of the error assigned to the action of the court in admitting evidence as to a testimonial sale of cattle given by the citizens of Chillicothe for the benefit of plaintiff, shortly after he was adjudged a bankrupt. It is not clear upon what theory the court admitted this testimony. It was not admissible upon

the issue of plaintiff's character, for that can only be assailed or established by proof of general reputation. Neither was it competent on the issue made by the defense of justification, for it did not tend to disprove that offense. Our courts have decided that the financial and social standing of both the plaintiff and the defendant, in libel and slander cases, may be given in evidence upon the question of damages. [Buckley v. Knapp, 48 Mo. 152; Polston v. See, 54 Mo. 291; Trimble v. Foster, 87 Mo. 49.] But we are not aware of any rule of law which authorizes the plaintiff to prove specific instances upon that issue, as was done in this case. The rule, as stated in 4 Ency. of Evidence, p. 29, is as follows:

"In some actions such as libel and slander the plaintiff may give in evidence, on the question of exemplary damages, his own rank and condition in life, because the degree of injury the plaintiff may sustain by the defamation may very much depend on his rank and condition in society. It has been said, however, that testimony received for that purpose should be confined to the plaintiff's general social standing, and not extended to minor details of his life."

The testimony complained of did not go to plaintiff's general standing, financially or socially, and would seem to be incompetent under the foregoing rule. However, under the facts of this case, we do not think that such testimony prejudiced the defendant in its substantial rights on the merits of the case. The defendant pleaded many specific instances of dishonest dealings on the part of the plaintiff and offered much evidence in support thereof. There was also much testimony by both sides on the issue of plaintiff's character, and his standing in the community was so thoroughly presented to the jury, independently of the testimony under consideration, that we do not regard its admission of sufficient importance to entitle the defendant to a new trial.

VI. Appellant's complaint that the court erred in refusing defendant's instructions in the nature of demurrers, at the close of plaintiff's evidence and again at the close of all the evidence, does not require extended consideration. We have ruled that the publication was libelous *per se.* Upon the issues of fact raised by the answer much conflicting testimony was introduced and the case therefore became one for the jury, both as to law and fact. We hold that the court properly refused such instructions.

VII. Error is assigned to the action of the court in the giving of instructions to the jury at the request of plaintiff.

Instruction numbered 1 defines libel in accordance with the statute and the decisions of this court. The error complained of is that the instruction ignored the issue of the truth of the publication as made by the answer; also that the instruction was given on the theory that the article was libelous *per se.* The latter complaint need not be considered. This instruction sets forth the alleged libel and is followed by the statutory definition of libel. The court then directs the jury that if they believe and find from the evidence that the article published falls within the definition previously given, then the article is libelous under the statute. In thus instructing the jury the court was following not only the law as approved by this court but the general law upon the subject. [Julian v. Kansas City Star Co., 209 Mo. 35; McCloskey v. Publishing Co., 152 Mo. 339; Odgers on Libel and Slander (4 Ed.), 105.] In Odgers, supra, the rule is laid down that: "The proper course is for the judge to define what a libel is in point of law and to leave it to the jury whether the publication in question falls within that definition."

The statutory definition of libel does not make the falsity of the publication a part of the definition.

The Constitution and statute provide that the truth of the libel may be given in evidence, but it may thus be given only when pleaded as an affirmative defense. Its falsity is presumed and need not be proved as a part of plaintiff's case.

We have examined the other alleged errors as to the giving of instructions numbered 9 and 10, and the refusal of defendant's instruction numbered 3, and find they are without merit. Instruction numbered 9 tells the jury that it is incumbent on the defendant, under the plea of justification, to prove the truth of all of the alleged statements in the publication, and that if it has failed to prove the truth as to any one charge and such charge is libelous, then the verdict must be against such plea. No principle of the law of libel is better settled than that declared in this instruction. [Meriwether v. Knapp & Co., 120 Mo. App. 354; 18 Am. & Eng. Ency. of Law (2 Ed.), p. 231; Neilson v. Jensen, 56 Neb. 430; Morse v. Printing Co., 124 Iowa, 707; Saunders v. Publishing Co., 94 N. Y. Supp. 993.]

Instruction numbered 10 is complained of only on the ground that it treats the publication as libelous *per se*. This phase of the case is dealt with elsewhere in this opinion, and as the instruction is in accord with the views there expressed, further consideration of the subject is not necessary.

Instruction numbered 3, requested by the defendant, was properly refused. Under the issues made by the pleadings the burden of proof upon each issue submitted did not rest upon the plaintiff, as stated in this instruction, and the court did not err in refusing it. [State v. Hosmer, 85 Mo. 553; Minter v. Bradstreet, 174 Mo. 444; Newell on Slander and Libel (2 Ed.), pp. 707, 708 and 794.]

VIII. Appellant complains that the verdict is excessive and the result of passion and prejudice of the jury.

This question has given us much concern. As the plaintiff was a non-resident of the State and went into the domicile of the corporation and the home of its owners, and there brought and tried his case, it would seem that the advantage, so far as the jury is concerned, should have been with the defendant. And the fact that no punitive damages were allowed would also seem to negative the existence of passion or prejudice. Besides, plaintiff's case did not depend upon proof of actual damages. Upon a finding of libel the extent of the injury and the amount of the verdict is peculiarly the province of the jury.

On the other hand, a court should not entirely close its eyes to a consideration of the proportion between the injury and the redress awarded. The rule is now established by the decisions of this court that if the verdict is excessive, and it does not appear in the record that the jury were actuated by passion or prejudice, and the record is otherwise free from error, the judgment will be affirmed only upon condition of a remittitur being entered. [Cook v. Globe Printing Co., 227 Mo. l. c. 547.]

With these observations, let us consider briefly some of the salient facts bearing upon this question.

Plaintiff was about forty years of age when he filed a petition in bankruptcy and was adjudged a bankrupt at Kansas City, in November, 1903. He had come to Chillicothe, Missouri, about thirteen years before from Detroit, Michigan. He brought about four thousand dollars with him and made a small payment on a farm of about four hundred acres, which he purchased. He left debts unpaid in Michigan, and said on the witness stand: "Sorry to say there was quite a number of bills followed me." He soon engaged extensively in the cattle business and borrowed much capital, mortgaging his property to secure his loans. Shortly before his failure he sought a letter showing his financial standing to be good, from a banker of

his home town, and the banker, after changing it from the form in which plaintiff brought it to him already prepared, signed it. When he failed his liabilities amounted to about one hundred and twenty-two thousand dollars, and his general creditors received only about six per cent of their claims. He claimed all of his exemptions, amounting to about eighteen hundred dollars. His neighbors gave him a testimonial sale which realized thirty-five hundred dollars. He then moved to Chicago and soon after to Kankakee, where he bought a farm of two hundred acres and organized a cattle company with a capital stock of one hundred thousand dollars, ten shares of which were owned by himself and wife and the remainder by his father-in-law. At the time of the trial he was again doing an extensive cattle business.

We have fully considered these facts, together with the other testimony, and without further discussing them our conclusion is that the verdict was clearly excessive. And averse as an appellate court is to review a verdict and hold it excessive in amount, we feel it our duty to do so in this case. Therefore, the judgment herein will be affirmed for the sum of six thousand dollars, as of the date of the return of the verdict and of the rendition of the judgment, and to bear interest from that date, if the plaintiff shall, within ten days from this date, remit the sum of four thousand dollars as of the date of said verdict. Otherwise the judgment will be reversed and the cause remanded for a new trial. It is so ordered. *Ferriss, P. J.,* and *Brown, J.,* concur.