Yvonne Sue **DIETRICH**, Appellant,

v.

The **PULITZER PUBLISHING COMPANY,**
a corporation, Respondent.

No. 52531.

Supreme Court of Missouri,
Division No. 2.

Jan. 8, 1968.

Bernard Steinger, Clayton, for plaintiff-appellant.

Evans & Hoemeke, Robert D. Evans, Robert B. Hoemeke, St. Louis, for respondent.

STOCKARD, Commissioner.

Plaintiff has appealed from a judgment in favor of defendant in her action for libel in which she sought actual and punitive damages in an amount far in excess of our minimum jurisdictional amount.

Plaintiff alleged she was libeled by two articles on March 23 and March 25, 1966, in the St. Louis Post-Dispatch, a newspaper of general circulation, said articles in their entirety being as follows:

"$12,000 IN COINS SEIZED IN RAID, MAN ARRESTED

"Coin collections valued at $12,000 were seized yesterday by police in a raid on the residence of Fred J. Dietrich, a former convict of the 4400 block of Ravenwood avenue, Pine Lawn.

"Dietrich was arrested when he fled through the back door of his home after officers knocked on the front door and informed him they had an arrest order for him. Nine police officers from Pine Lawn, Clayton and St. Louis had surrounded the four-room, one-story frame residence.

"Dietrich, released from the state penitentiary about a year ago after serving a two-year term for burglary, was booked suspected of burglary and stealing and released on $2500 appearance bond returnable next Wednesday in the court of Magistrate Harry Stussie of Clayton.

"Detective James Smith of the Clayton police reported that officers found more than 1500 coins in drawers and in heating ducts in the house. Many of the coins were old and others were foreign, he said. The seized coins included 100 silver dollars.

"Coin collectors who have been victims of burglaries will be asked to inspect the money, Smith said. The coins were taken to the Pine Lawn police station for sorting. Two coin collectors inspected them at the request of Police and placed the $12,000 valuation on them. They said the face value of the coins was $2,000.

"Police went to Dietrich's home after Clayton police had indications that he might have some stolen coins and city police received what they described as an anonymous tip to the same effect.

"Dietrich is well-known to police and has a long arrest record in addition to his 1963 burglary conviction.

"Five officers, led by Capt. William Karabas of the Pine Lawn police, went to the front door. The other four posted themselves around the house. When Dietrich emerged, Karabas informed him that he had an arrest order for him and his wife, Yvonne Sue.

"Dietrich said he had to get dressed and slammed the door. He ran out the back door where Detectives Jerry Weisbrod and Peter O'Connell were waiting.

"After some discussion with Mrs. Dietrich, officers persuaded her to sign a consent-to-search form. She was not arrested. The Dietrichs' 4-year-old daughter was there at the time."

"RECOVERED COINS ARE STOLEN FROM TOWN'S CITY HALL

"Part of a stolen coin collection that had been recovered Tuesday from the home of a former convict was stolen last night from the office of the Pine Lawn city clerk, police discovered today.

"Burglars forced entrance to City Hall, 6250 Forest avenue, borke [sic] into the clerk's office and punched open a safe. The coins, of undetermined number and value, were taken. Pine Lawn police headquarters is in the basement of the building, but no officers are on duty after 11 p. m., it was reported.

"Police recovered coin collections valued at $12,000 in a raid on the home of Fred Dietrich, convicted burglar, in the 4400 block of Ravenwood avenue, Pine Lawn. Dietrich was arrested and released on $2500 bond, returnable in magistrate court next week. More than 1500 coins, including 100 silver dollars, were found in drawers and heating ducts in the house.

"Capt. William Karabas told a reporter today that some coins were placed in a bank yesterday. An inventory is being made to identify those removed from the same, Karabas said."

Plaintiff alleged that she operated an ice cream and food business known as Tastee-Freeze in St. Louis County, and that defendant's newspaper was circulated throughout the county and the City of St. Louis. She then alleged as follows:

"5. That said articles were circulated among and read by the residents of the City and County of St. Louis and that said articles referred to plaintiff and were intended to refer to plaintiff, and were so interpreted by the residents of the City and County aforesaid, as it was well known by said residents that plaintiff had a coin collection and at said time was selling, trading, exchanging, purchasing and collecting coins and paper money, and further, was doing business in the said area.

"6. That the publications aforesaid by the defendant were false, wanton, wilful, malicious, illegal, and recklessly made with the intent to defame the reputation and business of this plaintiff and to injure this plaintiff's reputation, business and business reputation in that plaintiff was thereby deprived of public confidence and social intercourse.

"7. That as a direct result of said publications, sales and distribution of same, plaintiff's reputation and business has diminished and the good will thereof destroyed; that plaintiff was greatly embarrased [sic] and humiliated and she was injured in name and reputation and deprived of public confidence and social intercourse, all to plaintiff's damage in the amount of $100,000.00; that by reason of the fact said publications were false, wanton, wilful, malicious, illegal and recklessly made, plaintiff is entitled to punitive damages in the amount of $1,000,000.00."

Defendant filed as part of its answer, a motion to dismiss plaintiff's petition for failure to state a claim upon which relief may be granted. This motion was not ruled by the trial court. In its answer defendant admitted the publication of the two articles, it alleged the truth of the statements therein, and denied generally the other allegations. Defendant also filed a motion for summary judgment, and attached thereto the affidavits of four police officers, the affidavits of the two reporters who wrote the news stories, and the affidavit of the assistant city editor who authorized their publication. Attached to the affidavits of the police officers are various police investigation reports. These affidavits and reports are lengthy. We shall summarize the factual information contained therein.

The St. Louis police received an anonymous telephone call stating that Fred J. Dietrich and his wife, Yvonne Sue, had knowledge of or were responsible for the burglary of the Ebling home in Clayton, Missouri. Sergeant Spicer of the St. Louis police told Captain Karabas of the Pine Lawn police that the information received was that Fred Dietrich "had a large quantity of coins and other articles taken in various burglaries throughout the city and county." Police officers went to the front door of the Dietrich home and told Fred Dietrich that they had an arrest order for him and for his wife. Fred Dietrich attempted to leave by the rear door, but other police officers were waiting there for him and he was arrested. The police requested permission to search the house, but plaintiff refused. However, she later consented

and signed a written "Consent to Search and Seize." The police searched the house and found hidden or concealed in the heating ducts, behind the furnace and under furniture a quantity of coins, radios, jewelry, camera equipment, and other property. Some of the property, other than the coins, was subsequently identified by the owners as having been stolen from them. At the time of the seizure by the police, plaintiff said that some of the coins and property belonged to her, but that she did not know where the rest had come from. The coins were taken to the police station, and later some of them were placed in the safe in the office of the city clerk. During the night of March 24, the safe was broken open and the coins were stolen. Mr. Donald Tapperson, a reporter for defendant, wrote the article published on March 23, 1966, based on information received from the police. Mr. Peter Donhowe, also a reporter for defendant, was told by Captain Karabas that "part of a stolen coin collection that had been recovered from the home of Mr. Dietrich had been stolen from the safe." Based upon this and other information received from the police Mr. Donhowe wrote the article which was published on March 25, 1966.

Plaintiff filed an affidavit which she stated was "in opposition to affidavits of defendant." She there stated that when Captain Karabas "discovered some coins" she told him that "they were a part of her personal collection," and that she "objected to the police taking her coins." The remainder of the affidavit pertains to the conduct of the police in searching the house, and the circumstances under which she gave her consent for the search, facts which even if true have no bearing on the issue of whether the publication of the articles constituted a libel.

█ The facts stated in the affidavits and exhibits filed by defendant in support of its motion for summary judgment to which plaintiff filed no verified denial stand admitted for the purpose of the motion for summary judgment. Gruenewaeld-

er v. Wintermann, Mo., 360 S.W.2d 678, 686; Grubb v. Leroy L. Wade & Son, Inc., Mo., 384 S.W.2d 528; E. O. Dorsch Electric Co. v. Plaza Construction Co., Mo., 413 S.W.2d 167. Summary judgment, as authorized by Civil Rule 74.04, V.A.M.R., is applicable to an action for libel. Spradlin's Market, Inc. v. Springfield Newspapers, Inc., Mo., 398 S.W.2d 859; Fletcher v. Evening Star Newspaper Co., 72 U.S.App. D.C. 303, 114 F.2d 582, certiorari denied, 312 U.S. 694, 61 S.Ct. 732, 85 L.Ed. 1130. However, by Civil Rule 74.04(h), V.A.M.R., it is expressly admonished that in no case shall summary judgment be rendered on issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law, and the rule does not require or contemplate the granting of summary judgment where such judgment for any reason is not appropriate under the circumstances even though the facts be taken as in the moving party's affidavits. Cure v. City of Jefferson, Mo., 380 S.W.2d 305, 310; E. O. Dorsch Electric Co. v. Plaza Construction Co., supra. We are of the opinion that summary judgment was not appropriate in this case because it was premature in that, for the reasons subsequently set out, plaintiff's petition does not state a claim for libel.

█ In this state by reason of Civil Rule 55.22, V.A.M.R., in an action for libel it is not necessary to allege in the petition extrinsic facts to show the application to plaintiff of the alleged defamatory words out of which the claim arose. It is sufficient to allege generally that the words were published concerning plaintiff. This rule authorizes pleading generally what is sometimes called the "colloquium." However, when the published words are not per se actionable, and plaintiff in this case admits that they are not and we agree, in order to state a claim for libel there must be pleaded in the petition what is known as the "innuendo," which by reference to pleaded extrinsic facts constituting the "inducement" shows or demonstrates the defama-

tory sense of the published words. Sotham v. Drovers Telegram Co., 239 Mo. 606, 144 S.W. 428; Fensky v. Maryland Casualty Co., 264 Mo. 154, 174 S.W. 416, Ann.Cas. 1917D, 963; Furlong v. German-American Press Ass'n, Mo., 189 S.W. 385; Stowers v. Western Bentley Mercantile Co., Mo. App., 140 S.W.2d 714; Chambers v. National Battery Co., D.C., 34 F.Supp. 834; 53 C.J.S. Libel and Slander § 162; 33 Am. Jur. Libel and Slander §§ 239 and 241. See generally, Langworthy v. Pulitzer Publishing Company, Mo., 368 S.W.2d 385, pertaining to a publication not libelous per se when no extrinsic facts were pleaded demonstrating the defamatory sense of the words.

■ ■ In paragraph 5 of the petition plaintiff alleged that the two publications referred to her, and in paragraph 6 she alleged by way of a conclusion that the "publications * * * were false, wanton, wilful, malicious, illegal, and recklessly made with intent to defame * * *." The fact that any or all of these characterizations may describe the published words does not necessarily result in them being a defamation within the meaning of Section 559.-410, RSMo 1959, V.A.M.S. Paragraph 7 of the petition pertains only to damages. Nowhere in the petition are there any allegations of extrinsic facts which show, or from which it reasonably could be found, that the published words constitute a defamation of plaintiff. Presumably, although this is speculation on our part, plaintiff contends that the two articles convey the message that she either stole the coin collection or that she knowingly was in possession of stolen property, but the articles do not state this, and plaintiff has alleged no extrinsic facts from which such a message reasonably could be found. In fact, plaintiff does not allege that the coin collection was her property or that it was not stolen, and we note that the uncontroverted facts in defendant's affidavits, if taken as true, do not establish that the coin collection was in fact stolen or that it did not belong to plaintiff. If the above speculation as to plaintiff's theory is not correct, we are indeed at a loss as to her theory. For these reasons the petition does not state a claim for libel.

■ Ordinarily when a first pleading is ruled to be insufficient in a trial court, the party is afforded a reasonable time to file an amended pleading if desired. See the general policy concerning amendments to pleadings in Civil Rule 55.53, V.A.M.R., and see also Burke v. City of St. Louis, Mo., 349 S.W.2d 930. We cannot now rule that plaintiff cannot state a claim for libel. If by amendment she is able to do so on our speculated theory, defendant's affidavits as now worded would not establish that there is no material issue of fact.

■ Defendant filed in this court a motion to dismiss the appeal because plaintiff's brief fails to comply with Civil Rule 83.05(c). The brief is inadequate, but not so totally lacking in conformity with the rule that the harsh action of dismissal should result.

For the above reasons the judgment is reversed and the cause remanded with directions to the trial court to dismiss plaintiff's petition for failing to state a claim upon which relief may be granted, and to enter such orders as it deems appropriate pertaining to permission to file an amended petition.

It is so ordered.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.