**FIRST NATIONAL BANK OF LIBERTY,**
**Missouri, Appellant,**

v.

**J. E. LATIMER, Respondent.**

No. 56083.

Supreme Court of Missouri,
Division No. 2.

Nov. 13, 1972.

William B. Waters, Arthur R. Kincaid, Liberty, for appellant; Hale, Coleberd, Kincaid & Waters, Liberty, of counsel.

Fred A. Murdock, Kansas City, for respondent.

HOUSER, Commissioner.

First National Bank of Liberty, Missouri (hereinafter "the bank") filed suit on a promissory note in the original amount of $22,500, dated January 10, 1964, due in 30 days, payable to the bank, signed as follows:

> "National School of Aeronautics
> by <u>Jean Price Latimer</u>, Pres.
> _____, V. Pres.
> Jean Price Latimer
> J. E. Latimer."

The prayer for the balance due on the note, including interest, was for $24,227.62. Jean P. Latimer went bankrupt. During pendency of the suit the bank received a sum through the bankruptcy court, which reduced the amount claimed to $22,105, plus interest. Neither National School of Aeronautics nor Jean Price Latimer was named as a party defendant. The sole named defendant was J. E. Latimer, who filed an unverified answer admitting that the note was signed as alleged; alleging that he executed the note as a surety for the school, "the maker thereof," without any consider-

ation; denying that he received value for executing the note; alleging that the bank at the time the note was executed knew that he signed as surety without consideration, and that the bank for a valuable consideration at or about the time of maturity of the note, without J. E. Latimer's knowledge or consent, agreed with the school to extend and did extend the time of payment of the note "whereby this defendant became discharged from all liability on said Note."

In answer to interrogatories filed by J. E. Latimer the bank, under the oath of its president, stated as facts the following: The consideration for the execution of the note sued on was the payment of a previous note for $25,000 executed by the same parties. The proceeds of the original note had been paid to the school by check for $25,000. On December 19, 1963 $2,500 was paid on the principal of the original note and $158.38 for interest due, by check drawn on Latimer Motors, Ltd. There were no other notes or agreements, written or oral, with any person in connection with the note in suit except extension agreements and security agreements executed by Jean Price Latimer, president of the school. By written extension agreements, eleven in number, it was mutually agreed between the bank and the school, the latter represented by Jean P. Latimer, as president, or between the bank and Jean P. Latimer, individually, that the $22,500 note dated 1–10–1964 be extended from time to time. The last date to which the note was extended was August 21, 1966. The security agreements consisted of a $10,000 note and mortgage payable to the bank, and a pledge of Jean P. Latimer's 205 shares of Latimer Motors, Ltd. stock, both dated July 13, 1964, reciting that these securities were pledged to the bank "in order to induce [the bank] to make additional financial accommodation to [the school], hereinafter called Borrower, including forbearance of immediate collection and renewal of past due promissory note." The only agreements altering the terms of the note sued upon were those represented by the extension agreements. (By implication the bank's answers excluded any agreement on the part of J. E. Latimer to extend the time of payment of the note in suit.)

By deposition, certified to by the notary (signature having been waived), J. E. Latimer stated as facts the following: Latimer and Jean Price were married January 1, 1961; divorced the first part of 1965. On January 1, 1964 Jean P. Latimer was president of the school and owner of all of the stock of the corporation. J. E. Latimer was vice-president, office manager and personnel manager in charge of expense accounts, at a salary of $2,000 per month. J. E. Latimer at no time owned any stock of the school corporation. Some of his salary checks were not honored, and the school "wasn't in the best condition." He and Latimer Motors, Ltd. were buying notes signed by students at the school in payment of tuition and endorsed by the school. The $2,658.33 check of Latimer Motors, Ltd. to the bank (credited on the original $25,000 note) was in fact payment for paper bought by Latimer Motors, Ltd. from the school. When Latimer signed the original note for $25,000 he and his motor company owned school paper, endorsed by the school with recourse, in the sum of "quite a few thousand dollars." J. E. Latimer had nothing to do with making the deal for the original $25,000 loan, or the renewal note in suit. All these dealings were between his wife and the officers at the bank. J. E. Latimer had not previously discussed a loan with the president of the bank, Mr. James, or any other officer of the bank, and he was not asked for a financial statement. All arrangements for the loan had been made before J. E. Latimer was called in and asked to sign the note. Latimer's wife, after indicating to him that she was borrowing $25,000 from the bank and that she had made a "deal" with Mr. James as to how the money was to be repaid, asked him to accompany her to the bank. It was then that *Mr. James asked J. E. Latimer to sign the note* "with her," and told Latimer that he need not worry about the note; "it's all set up. She's going to sell the building and

pay this back, and I just need your signature on here because we don't have any mortgage or anything." Latimer did not sign the note in suit "with the knowledge that [he] was going to pay it"; the bank, through its president, "knew that [he] wasn't signing it to pay it back." The loan was to the school. J. E. Latimer "didn't get any of it." When the note sued on matured J. E. Latimer refused to sign a renewal note or grant an extension of time. At the time the note was extended in February or March of 1964 the bank could have collected on the note because the school then had "plenty of assets over there that they could have come in and gotten" and Jean P. Latimer had at least $20,000–25,000 in personal assets that were "clear."

On the day Latimer's deposition was filed the bank filed (1) an unverified reply denying generally all affirmative matter contained in Latimer's answer and (2) a request for admissions. Latimer's verified responses to the bank's request for admissions contain statements of facts as follows: On and prior to January 11, 1963 and January 10, 1964 Latimer was vice-president of the school, on its payroll at a salary of $2,000 per month. Latimer was president of and owned the controlling interest in Latimer Motors, Ltd. All of this time Latimer Motors, Ltd. and Latimer individually were buying notes from the school with recourse against the school. He signed the note in suit but the school signed as principal to evidence its obligation to the bank. He signed "merely as a surety" on the representation of the bank president that the note was an obligation of the school and would be paid by the school. His signature was required merely as a surety for the obligation of the school. He received no consideration for the execution of the note. He denied that the note created any obligation for him to pay except in the capacity of surety, and affirmed that the Latimer Motors, Ltd. check for $2,658.33 to the bank was not given in acknowledgment of any obligation to the bank but was given on account of the purchase of notes or "student paper" from the school.

The bank failed to file a verified denial of the statements of fact in Latimer's deposition and in his verified responses to the bank's request for admissions, and failed to file any response, by affidavits or as otherwise provided in Civil Rule 74.04, V.A.M.R. setting forth specific facts showing that there was a genuine issue for trial.

In this state of the record each party filed a motion for summary judgment, each contending that under the uncontroverted facts before the trial court contained in the pleadings, deposition, answers to interrogatories and responses to requests for admissions, there was no genuine issue as to any material fact and that each party was entitled to a judgment as a matter of law. The bank's unverified motion alleged that the bank was entitled to judgment because Latimer executed the note and therefore was primarily liable thereon; that there was lawful consideration because of (1) Latimer's employment as an officer of the corporate maker of the note; (2) the ownership by Latimer and his controlled company of notes with recourse against the school, thereby making him a creditor of the school; and (3) the marital status between him and the other individual maker, resulting in the unavailability of the defense of suretyship. Latimer's countermotion alleged that under the uncontroverted and unassailable evidence he signed the note as a surety or accommodation maker, and that he is discharged of all liability because the bank granted extensions to the maker of the note (the school), based upon a valuable consideration, without Latimer's knowledge or consent.

The court overruled the bank's motion for summary judgment, sustained Latimer's motion for summary judgment, and rendered judgment for Latimer. In due course the bank appealed. Jurisdiction is in the Supreme Court because the appeal was taken before the jurisdictional amount was raised to $30,000, and before January

1, 1972. Art. V, §§ 3, 31, Constitution of Missouri, 1945, V.A.M.S.

The bank seeks to upset the summary judgment entered below in Latimer's favor and an appellate order directing summary judgment in its favor on the theory that it has been conclusively shown as a matter of law that Latimer is primarily liable on the note as a comaker; that Latimer received consideration for the note; that Latimer was demonstrably not a surety or accommodation maker entitled to discharge under § 401.120, V.A.M.S., as one secondarily liable; that Latimer was not shown by unassailable proof to be a surety or accommodation maker and that by the entry of summary judgment against it the bank has been deprived of the opportunity of offering evidence on this issue.

We affirm. The circuit court properly sustained defendant Latimer's motion for summary judgment and properly overruled the bank's motion of the same nature, under the pleadings, answers to interrogatories, deposition of J. E. Latimer, and his responses to requests for admissions.

■ The following facts, verified by J. E. Latimer in his deposition and responses, and not denied by the bank in the manner required by Civil Rule 74.04 to raise an issue for trial,[1] stand admitted and must be accepted by us as true for the pur-

pose of determining these motions[2]: J. E. Latimer signed the original note at the request of the president of the bank, who stated that the bank needed his signature on the note because the bank had no mortgage or other security, with an understanding between all parties that J. E. Latimer was not to be liable on the note, and that the bank would collect from the sale of a building owned by the school corporation. J. E. Latimer received none of the proceeds of the $25,000 loan, all of which went to the school corporation, which was the principal obligor. J. E. Latimer signed as surety for the principal obligor, to the knowledge of the bank.

The following facts were admitted by the bank: The note in suit was given as a renewal for the balance due on the original note. The bank extended the time of payment of the renewal note eleven times, dealing with Jean P. Latimer in reaching these agreements, and making no agreements with any other person. The extension agreements were supported by legal consideration.

■ On the basis of these facts we are obliged to rule as follows: J. E. Latimer was an accommodation maker of the original note. He came within the definition of accommodation maker contained in § 401.029.[3] He signed the note as

---

1. As previously indicated the bank did not file any counteraffidavit, deposition or otherwise present any verified proof touching the facts related by J. E. Latimer in his deposition and verified responses, contenting itself with and relying entirely upon an unverified and conclusory general denial by way of reply pleading, in the face of Civil Rule 74.04(e), which provides as follows: "When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." As pointed out in the Committee Note to the above rule, V.A.

M.R., p. 537, the summary judgment remedy becomes substantially without utility if a reply pleading be held sufficient to raise a genuine issue as to uncontradicted evidentiary matter; and if the opposing party fails to present depositions, affidavits, etc. showing the existence of a genuine issue of fact he must suffer judgment to be entered against him.

2. Dietrich v. Pulitzer Publishing Co., Mo. Sup., 422 S.W.2d 330, 333 [1]; Gruenewaelder v. Wintermann, Mo.Sup., 360 S.W.2d 678, 686; Grubb v. Leroy L. Wade & Son, Inc., Mo.Sup., 384 S.W.2d 528, 530 [2]; E. O. Dorsch Electric Co. v. Plaza Construction Co., Mo.Sup., 413 S.W.2d 167, 169–170 [3].

3. of the N.I.L., which was in effect as of the date of these transactions (section numbers referring to RSMo 1959).

a maker without receiving value therefor and for the purpose of lending his name to the bank, which was the accommodated party. He was also surety for the principal obligor, the school corporation. "[O]ne may be both an accommodation maker and a surety on the same note." Dickherber v. Turnbull, Mo.App., 31 S.W.2d 234, 237 [6]. The foregoing relationships continued upon the execution of the renewal note in suit.

█ The bank, as payee, was not a holder in due course as between itself and J. E. Latimer, and therefore under § 401.058 the note was subject to the same defenses as if it were nonnegotiable. The bank, as the party accommodated by J. E. Latimer, acquired no rights against the latter, there being no consideration between them, particularly in view of the mutual understanding between the bank and J. E. Latimer that he need not worry about the note; that the bank would look elsewhere for payment. Dickherber v. Turnbull, supra, 31 S.W.2d, 1. c. 236 [2, 3]; Town & Country Shoes Federal Credit Union v. Cramer, Mo.App., 350 S.W.2d 281, 284 [2], and authorities cited.

Furthermore, J. E. Latimer, on suretyship principles apart from N.I.L., as surety for the principal obligor, was discharged from liability on this note because the bank entered into binding agreements with the principal obligor extending the time of payment of the note for definite periods of time, without the knowledge or consent of J. E. Latimer. Long v. Mason, 273 Mo. 266, 200 S.W. 1062; People's Bank of Chamois v. Smith, Mo.App., 263 S.W. 475; Newkirk v. Hays, 220 Mo.App. 514, 275 S.W. 964; Citizens' Bank of Union v. Hilkemeyer, Mo.App., 12 S.W.2d 516; Dickherber v. Turnbull, supra.

█ The bank's contention that this record shows by unassailable proof that J. E. Latimer received consideration for signing the note is disallowed. Section 401.024 provided that every person whose signature appears on a negotiable instrument is deemed prima facie to have become a party thereto for value, but this presumption does not constitute "unassailable proof" within the meaning of Civil Rule 74.04(h). Burns v. Weber, Mo.App., 399 S.W.2d 446, 449. This presumption was overcome by Latimer's positive testimony on the subject. The bank's position is that consideration is to be found, and that J. E. Latimer is deprived of his status as a surety, because of his admissions that he was an officer, creditor, and husband of the president of the principal obligor. No authority is cited for this proposition. In some cases consideration is found when a person interested in a partnership, corporation or business enterprise *as a partner or stockholder* gives his individual note for money loaned or advanced to the partnership, corporation or business, Farm & Home Savings & Loan Ass'n v. Theiss, 342 Mo. 40, 111 S.W.2d 189; Holland Banking Co. v. Griggs, 323 Mo. 289, 19 S.W.2d 290; Thompson v. McCune, 333 Mo. 758, 63 S.W.2d 41, 44, but J. E. Latimer was not interested in the school corporation as a stockholder. He had no demonstrated financial interest in the business as an owner. Even a stockholder, sued on a note given by him to the bank in which he holds stock, may show that the note was given for the bank's accommodation, where there is a resolution of the directors calling for payment of the note out of the earnings of the bank. Farmers' Bank v. Miller, Mo.App., 8 S.W. 2d 92. J. E. Latimer's interest in the payment of salary checks for his services as employee is too remote to constitute the basis for a finding of consideration, at least in the absence of proof that the $25,000 was borrowed to keep the school open, was placed to the credit of the school and used to pay salaries, none of which has been shown. A creditor of a corporation who signs a note by which the corporation derives funds is not precluded from showing that he is an accommodation maker, and the fact that he is a creditor does not show such an interest as to constitute consideration precluding his status as an accommodation party. 11 Am.Jur.2d Bills and Notes § 121, p. 161. There is no consideration arising out of the marital relationship

where a husband signs the note of a corporation of which the wife is president, where the corporation and not the husband receives the proceeds of the note. See Skatoff v. Solomon, Mo.App., 244 S.W.2d 590, 593 [4].

At the time judgment was rendered the court offered to set aside the judgment and afford the bank an opportunity to clarify the record on the question whether there was a valid consideration for the extension agreements. At such postjudgment hearing the bank could have offered evidence on the issue whether Latimer was an accommodation maker or surety and whether he received value for signing the note (of which opportunity the bank now complains that it has been precluded) but the court's offer was not accepted.

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.