**KROH BROTHERS DEVELOPMENT COMPANY, Respondent,**

v.

**STATE LINE EIGHTY–NINE, INC., et al., Appellants.**

**No. KCD 26484.**

Missouri Court of Appeals, Kansas City District.

Feb. 4, 1974.

Johnson, Lucas, Bush & Snapp, Hilary A. Bush, Kent Snapp, James L. Burgess, James M. Beck, Kansas City, for appellants.

Terence M. O'Brien, Kansas City, for respondent.

Before SHANGLER, P. J., and SWOFFORD, and WASSERSTROM, JJ.

SWOFFORD, Judge.

This is an appeal from a summary judgment entered in the court below, under Rule 74.04, V.A.M.R., in favor of the plaintiff (respondent) and against the defendant corporation and one Melvin E. Kleb (appellants) in a suit on a promissory note of the corporation and a contemporaneous guaranty agreement of the defendant Kleb.

The plaintiff will be hereinafter referred to as "Kroh"; the defendant State Line Eighty-Nine, Inc. as "State Line"; and the individual defendant as "Kleb".

The appellants present two points upon which appellants seek our mandate of reversal, namely, *First,* the court erred in entering summary judgment because the case was not then at issue and State Line and Kleb were entitled to plead to Kroh's amended petition and raise additional issues; and *Second,* the court erred in entering summary judgment under the record because there remained for adjudication genuine material and contested issues of fact as to which Kroh had not presented

unassailable proof that it was entitled to recover.

In deciding this appeal as to the facts, we must "take the record as we find it" and limit our consideration to the pleadings, admissions, affidavits or depositions and the formal record entries. So viewed, this record shows:

This suit was instituted on April 20, 1972 by Kroh, in which it alleged the execution of a promissory note by State Line payable to it, dated December 9, 1970, in the face amount of $299,000.00, which represented the purchase price of certain land. A copy of said "Collateral Pledge Promissory Note" was attached to Kroh's petition and made a part thereof. It was executed for State Line by Kleb, President, and provided in pertinent part that the sum of $142,000.00 would be paid on the principal of such note on January 2, 1971 (together with all accrued interest at 4% at the option of State Line). If the interest was not included in the January 2, 1971 payment, the unpaid balance of the interest only was to bear 10% interest per annum. On January 1, 1972, State Line was obligated to pay $1500.00 per month to and including December 1, 1974, to be first applied to interest and the balance, if any, of such payments to be then applied to principal. Thereafter, State Line was to pay $3500.00 per month to and including December 1, 1976 under the same provisions as to application of the payments to principal and interest. The entire unpaid principal and accrued interest was payable to Kroh on January 1, 1977.

All of the payment agreements provided that if default was made in any such payment "when due", the entire amount due on the note, both principal and interest, "shall, at the option of the holder of the note, immediately become due and payable and bear interest from that date until paid at the rate of 10% per annum, compounded annually."

To secure the note, State Line deposited 5000 shares of its stock (all of the capital stock of the corporation) and a certificate of deposit in the principal sum of $142,000.00 (with power to substitute government bonds therefor) with a bank as escrow agent. The note set forth in detail the obligations of the escrow agent in the event of default. It further provided that upon default of the note, Kroh, at its sole option, had the right "of collecting the balance due on this note either from Melvin E. Kleb, the guarantor, or of looking to the State Line Eighty-Nine, Inc. stock * * * for the payment of the balance of the note."

Pertinent here also is the fact that the note sued upon provided that State Line "shall pay all costs of collection; legal expenses, and attorney's fees incurred in collecting the note."

Simultaneously with the execution of this note, Kleb executed, in his individual capacity, a document dated December 9, 1970, directed "To: Kroh Bros. Development Co., Inc." wherein Kleb "absolutely and unconditionally guarantees to you and to your successors or assigns the prompt payment of the above note." This agreement referred to the various payments under the note as "Items" and then further provided:

"Neither the taking or the releasing of security * * * nor the lack of diligence on your part in exercising any remedies against the parties to said Items shall release the undersigned from the absolute and unconditional liability of the undersigned hereunder."

The Kroh petition, before amendment, alleged that the sum of $142,000.00 was paid on said note on January 4, 1971, but that State Line had failed to make the $1500.00 payments due January 1, 1972 and for each month thereafter up to and including April 1, 1972, and that on April 17, 1972, Kroh declared the entire balance due and payable, made demand therefor, but had not been paid. Kroh prayed for a judgment of $157,000.00 principal, plus interest, and for an attorney's fee of $10,000.00.

On June 19, 1972, State Line filed its separate answer to Kroh's petition in which it admitted its corporate identity; admitted the execution of the promissory note; and "that substantial payments have been made thereon"; and denied each and every other allegation in Kroh's petition. By way of affirmative averments, State Line further alleged that the petition failed to state a claim upon which relief could be granted because the language of the note covering Kroh's rights in the event of default limited those rights to collection of the unpaid balance from either Kleb "the guarantor" or from the proceeds of a sale of the State Line stock representing collateral to the note. State Line asserted in its answer that the acceptance by Kroh of these terms constituted "an irrevocable and unqualified election of remedies" which precluded the maintenance of this suit against it.[1]

On the same day, defendant Kleb filed his separate answer to Kroh's petition in which he admitted that the sum of $142,000.00 was paid on January 4, 1971 in satisfaction of a portion of the principal of said note; that Kroh had "waived" its right to accelerate the note "by virtue of having failed to so accelerate immediately upon the default"; and that the note was usurious in that it called for interest at the rate of 10% per annum, in clear violation of Section 408.030 RSMo 1969, V.A.M.S.

Thereafter on June 22, 1972, Kroh filed identical Requests for Admissions to State Line and Kleb, to which such defendants filed answers and objections on July 3, 1972. The impact of this procedure upon the record before us may be summarized as follows:

Both defendants had no actual knowledge of the corporate status of Kroh and therefore denied same.

Both defendants admitted the corporate identity of State Line.

Both defendants admitted the execution of the note on December 9, 1970 and that a true copy was attached to Kroh's petition.

Both defendants admitted the execution by Kleb of the document of December 9, 1970 attached to Kroh's petition but denied that such instrument was a guaranty.

Both defendants admitted that the only payment which had been made on the note was $142,000.00 paid on the principal on January 4, 1971.

Both defendants objected to the request for admission (that on April 14, 1972 defendant State Line had been notified by letter of State Line's default in the monthly payments on the note for January 1, 1972, February 1, 1972, and March 1, 1972 and April 1, 1972, and that Kroh was exercising its option of acceleration and declaring the entire balance due and payable) on the grounds that the request called for conclusions, conclusions of law and did not set out facts which could be admitted or denied.

Both defendants admitted that by letter of April 14, 1972, demand was made upon Kleb as guarantor for the payment of the entire balance, both principal and interest.

Both defendants admitted upon information and belief that the 5000 shares of capital stock of State Line referred to in the note were still being held by the escrow agent.

Both defendants had no knowledge of the fact that Kroh had made no demand on said escrow agent for the delivery of the stock and therefore denied this fact.

1. This defense was abandoned by State Line as it does not appear in any other pleading, brief below or motion for new trial. Nor is this position urged here. Obviously the position is without merit since the portion of the note relied upon deals only with alternative rights of Kroh, in the event of default, with reference to the guarantee and security on the note and cannot by any reasoning, however labored, be interpreted as intending to release the maker of the note, State Line, from its primary and continuing liability to pay the obligation.

On August 11, 1972, Kroh filed Motion for Summary Judgment under Rule 74.04 supported by the Affidavit of John A. Kroh, Jr., president of Kroh, setting forth that Kroh was a Missouri corporation and that on May 29, 1972 its name had been changed to Kroh Brothers Development Company; that it was the owner and holder of the note in suit and the Kleb guaranty; that the State Line stock was still held by the escrow agent; that Kroh had made no demand on said escrow agent for the delivery of such stock; and that Kroh had employed Mr. O'Brien as its lawyer to collect the amounts due on the note and guaranty.

Also attached to the motion was the supporting affidavit of Terence M. O'Brien which set forth that he had been employed by Kroh as counsel; that, as such, on April 14, 1972, he had written a letter to State Line, certified mail with return receipt requested, in which he advised State Line that Kroh was declaring the entire balance of principal and interest due and making demand for payment; that a copy of such letter was attached to the affidavit together with the certified mail documents showing delivery to State Line on April 17, 1972; that on April 14, 1972, he had written defendant Kleb, certified mail with return receipt requested, in which he notified Kleb of State Line's default, that Kroh was exercising its option and declaring the entire balance principal and interest due and payable and demanding payment thereof from Kleb as guarantor; that a copy of such letter was attached to the affidavit together with the certified mail documents showing delivery of the letter to Kleb on April 17, 1972; and that the sum of $10,000.00 was the fair and reasonable value of his legal services in connection with the action.

Kroh filed extensive suggestions in support of its motion for summary judgment, the thrust of which was that the legal position of Kleb and State Line was without merit and that there was no genuine issue of material fact remaining in the case and that, therefore, it was entitled to a summary judgment.

Both defendants filed separate but identical suggestions in opposition to the motion for summary judgment (the exact date of this filing is not shown in the transcript). These were unverified and were not accompanied by any counteraffidavits of fact nor verified documents of any kind. The defendants' position, as revealed in these suggestions, is summarized.

1. Summary judgments are not favored and should be overruled if there is any material fact issue to be decided.

2. Fact Issue No. 1. Kroh waived its right to accelerate the note. The suggestions state "At the trial this defendant(s) *will produce a large amount of evidence showing both by acts and deeds that plaintiff has forfeited and given up its right to accelerate the note sued on.*

3. Fact Issue No. 2. Kleb was a co-maker and not a guarantor of the note and therefore his rights were different. The suggestions state, *"At the trial this defendant will produce very substantial proof on this fact question showing that he was a co-maker and not a guarantor of this note."*

4. Fact Issue No. 3. The note is usurious as to Kleb since it calls for 10% interest. *Evidence will be required to show he is a co-maker and not a guarantor for this defense to be available to him.*

5. Fact Issue No. 4. The request for $10,000.00 attorney's fee is a disputed fact issue supported only by the affidavit of O'Brien. The suggestions state: *"At the trial this defendant(s) will produce evidence that $10,000.00 is a greatly excessive attorneys fee considering the time and effort put in by Mr. O'Brien.*

Defendants' suggestions in conclusion under a heading entitled "Other Facts" state, *"At the trial of this case there will no doubt be many other questions of fact that arise. \* \* \** In this particular situation there is no question but what there are numerous fact questions which must be decided before this Court is in a position to render a judgment."

Plaintiff filed Reply Suggestions on or about August 16, 1972 (the exact date is not shown in the transcript) and we must assume that copies thereof were served upon counsel for defendants. In this reply the plaintiff suggested to the trial court that it enter a summary judgment on all issues *except* that of the amount of attorney's fee as permitted by Rule 74.04(a) and Rule 74.04(d) and set forth a suggested form for such "Partial Summary Judgment".

No further proceedings appear in the transcript until October 6, 1972, on which date upon "oral application" and "in open court" plaintiff amended its petition by striking therefrom all reference to or prayer for attorney's fee. On that same day, the court entered summary judgment for Kroh from which judgment this appeal is lodged.

On October 18, 1972, defendants filed a joint motion for a new trial setting forth that the judgment was improvidently entered since they had 10 days under Rule 55.53 to plead to plaintiff's amended petition (amended by striking allegations and requests for attorney's fee). Further, State Line and Kleb asserted that there remained for trial adjudication genuine and contested issues of fact, namely, (a) waiver by Kroh of the option to accelerate the note upon default; and (b) whether or not Kleb was guarantor or co-maker as the same bore upon the claim of usury. State Line and Kleb further asserted in such motion that the amount of principal and interest for which judgment was entered was improperly computed.[2]

On November 15, 1972, after extensive briefs from the parties, the court below overruled defendants' motion for a new trial and this appeal followed.

■ It is true that the remedy of summary judgment is an extreme and drastic one and great care should be exercised in its use. Such a judgment is a determination as a matter of law that there is no issue of fact to be tried. Elliott v. Harris, 423 S.W.2d 831 (Mo. banc 1968). The burden is upon the moving party to show by unassailable evidence that there is no issue of fact remaining in the case. Rule 74.04(b); Brooks v. Cooksey, 427 S.W.2d 498 (Mo.1968); Dunn v. General Motors Corporation, 466 S.W.2d 700 (Mo.1971). Upon an appeal from the entry of such a judgment the appellate court must view the record in the light most favorable to the party against whom the judgment was rendered. Scott v. Thornton, 484 S.W.2d 312 (Mo.1972).

■ In the exposition of these principles, we cannot ignore that an important, fundamental purpose of the summary judgment proceedings is to speed the final determination of that class of case where there is, in fact, no real need for the delay and expense incident to a trial, no substantial issue of material fact, and which can be determined as a matter of law. Brown v. Prudential Insurance Company of America, 375 S.W.2d 623, 629 (Mo.App.1964).

The rules governing procedure in the application of this remedy are clear and explicit.

Rule 74.04(a) provides that a claimant may move for summary judgment "with or without supporting affidavits" in his favor "upon all or any part" of his claim.

Rule 74.04(c) provides for service of such motion at least ten days before a hearing and that "the adverse party prior to the day of the hearing may serve opposing affidavits". This rule further provides

2. This point is not urged upon appeal.

that the judgment sought "shall be rendered *forthwith* if the pleadings, depositions, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." (emphasis added) It further provides for a judgment "interlocutory in character" on the issue of liability although there is a genuine issue remaining as to damages.

Rule 74.04(d) empowers the court, if a trial is necessary, to ascertain which facts are without substantial controversy and what "material facts are actually and in good faith controverted" and to designate by order those facts which require a trial.

Rule 74.04(e) provides that the affidavits in connection with the summary judgment proceeding shall set forth facts which would be admissible in evidence, be made by a person competent to testify to such matters, and that sworn copies of all papers referred to be attached. This rule further provides:

"When a motion for summary judgment is made and supported as provided in this Rule, an adverse party *may not rest upon the mere allegations or denials of his pleading, but his response,* by affidavits or as otherwise provided in this Rule, *must set forth specific facts* showing that there is a genuine issue for trial. *If he does not so respond, summary judgment, if appropriate, shall be entered against him."* (emphasis added)

As stated above, at the time the motion for summary judgment was filed, State Line and Kleb had admitted the execution of the promissory note and the guaranty agreement, the delivery thereof, and that the payments on the note were in default. Fact issues then unresolved were, the corporate status of Kroh; whether or not proper demand had been made upon State Line and Kleb for payment of the balance of the principal and interest due; whether or not Kroh had waived its right of acceleration under the terms of the note; and the value of the services rendered by Kroh's

attorney. Additional asserted "issues of fact" by Kleb as to his status as a "co-maker" and not a "guarantor" of the note and that the note is usurious are in truth questions of law.

The fact issues as to the corporate status of Kroh and the demand for payment were resolved by the affidavits and attachments accompanying Kroh's motion for summary judgment as noted above.

█ In response to the motion for summary judgment State Line and Kleb filed only identical unverified "Suggestions in Opposition to Plaintiff's Motion for Summary Judgment", in the nature of memorandum briefs on the law. In so doing, both failed to follow the mandate of (and the opportunity afforded by) Rule 74.04(e), supra. They could not then rest upon the allegations or denials of their answers to the petition or to requests for admissions but were required to *"set forth specific facts"* by affidavit or otherwise showing that there remained for trial genuine issues of material fact. Rather, they stated that in their suggestions there were four fact issues remaining upon which they would produce "large amounts of evidence" and "substantial proof" at the trial. These were 1) waiver of the acceleration clause; 2) that Kleb was a co-maker and not a guarantor; 3) that the note was usurious; and 4) that an attorney's fee of $10,000.00 was grossly excessive.

Under the state of this record, the trial court (and this court) would be completely justified in disregarding these positions except the one relating to attorney's fee. Aside from the clear mandate of Rule 74.04(e), the decisional law is clear that the statements in the suggestions of State Line and Kleb, presented nothing to warrant a denial of summary judgment, except on the issue of the *value* of the attorney's services. As was stated in the case of Brown v. Prudential Insurance Company of America, supra, at l. c. 633:

"It should be noted that if the abstract statement appearing in plaintiff's brief,

that he could produce witnesses to refute the proof submitted by the moving party for summary judgment, was acceptable to defeat defendants' judgment, then such a procedure, if tolerated, would completely circumvent the purpose of the rule permitting summary judgments."

See also: E. O. Dorsch Electric Co. v. Plaza Construction Co., 413 S.W.2d 167, 170 (Mo.1967); State ex inf. Reardon v. Mueller, 388 S.W.2d 53, 57 (Mo.App.1965); Dietrich v. Pulitzer Publishing Company, 422 S.W.2d 330, 333 (Mo.1968); First National Bank of Liberty v. Latimer, 486 S.W.2d 262, 266 (Mo.1972).

■ Thus, it is clear that when a party to litigation is forced by a proper motion for summary judgment under Rule 74.04, he cannot sit idly by, rely upon his pleadings of denial or ultimate facts, or argue that he has evidence for trial that will disclose issues of fact. Rather, he must come forward then with affidavits, depositions, documentary or other evidence that *material fact issues* do *in fact* exist. He cannot then withhold his evidence for trial, nor protect himself by speculative possibilities that material fact issues may develop in the future. Otherwise, he is helplessly vulnerable to the "harsh and drastic" remedy of summary judgment. This is exactly the position of the defendants in the case at bar.[3]

■ On the question of alleged waiver of Kroh's right to accelerate the note upon the default of any monthly payment, it is clear that this was an *option* open to Kroh upon such default. No time limit is contained in the terms of the note, which would require Kroh to exercise or forego its option upon the *first* default. Forebearance is not waiver. Waiver is an intentional relinquishment of a known right

shown by express declaration or clearly to be implied from "clear, unequivocal and decisive" acts so consistent with such intent as to leave no other reasonable explanation. Bartleman v. Humphrey, 441 S.W.2d 335 (Mo.1969); Lucas Hunt Village Co. v. Klein, 358 Mo. 1054, 218 S.W.2d 595, 599 (banc 1949); Spires v. Lawless, 493 S.W.2d 65, 73 (Mo.App.1973). Nothing in the record before us contains evidence of such specific acts of waiver. On the other hand, the claimant, Kroh, exercised its option by declaring the unpaid principal and interest due in April 1972, as shown by the unchallenged affidavits and attachments thereto in the record. Further, the guaranty agreement of Kleb specifically provides that any "lack of diligence" on the part of Kroh in exercising "any remedies against the parties" shall not release Kleb's "absolute and unconditional liability" under the guaranty. There was no waiver of the acceleration option by Kroh.

■■ The guaranty signed by Kleb is clear and unambiguous. It states in part:

"To: Kroh Bros. Development Co., Inc.

For valuable consideration the undersigned hereby *absolutely and unconditionally* guarantee to you and to your successors or assigns the prompt payment of the above note * * *" (Emphasis added)

The promissory note, the payment of which this guaranty secures, refers to Kleb, consistently and repeatedly as the "guarantor" and as "guarantor of this note" and Kleb signed the note in his capacity as President of State Line. The terms as employed in these formal instruments must be given their usual and ordinary meaning and are to be understood in their plain and ordinary sense. Zoglin v. Layland, 328 S.

3. Our summary judgment rule is derived from Fed.R.Civ.P. 56, and this premise finds persuasive authority in texts and decisions involving that Rule. Missouri Portland Cement Co. v. Denny Concrete Co., Inc., 499 S.W.2d 432, 438 (Mo.1973); 10 Wright & Miller, Federal Practice and Procedure, Sec. 2739; 6 Moore's Federal Practice, Sec. 56.-23; 3 Barron and Holtzoff, Federal Practice and Procedure, Sec. 1238 (1971 Pocket Part), *and authorities cited therein.*

W.2d 718, 721 (Mo.App.1959); Four-Three-O-Six Duncan Corporation v. Security Trust Company, 372 S.W.2d 16 (Mo. 1963). So viewed, it is beyond question that Kleb was a personal guarantor of the note in question and extrinsic evidence would be inadmissible to contradict or vary the written and unambiguous terms of his guaranty.

 As guarantor, Kleb stood in the place of State Line, Linwood State Bank v. Lientz, 413 S.W.2d 248, 253 (Mo.1967) and any right he had to question the validity of the note as usurious was derivative from and based upon and identical to the original debtor's rights. Straus v. Tribout, 342 Mo. 511, 116 S.W.2d 106, 108 (1938). Since State Line was admittedly a corporation, the defense of claimed usury was unavailable to it and accordingly would be unavailable to Kleb, its guarantor. Section 408.060 RSMo 1969, V.A.M.S. Although Kleb raised the question of usury in the court below, such point was neither briefed nor argued here.

On October 6, 1972, the date upon which the summary judgment was entered, the only fact issue remaining in the case was the *amount or value* of the services rendered by Kroh's attorney. Kroh's petition asks for a judgment for $10,000.00 for such services. This part of the petition was answered only by general denial. On this issue, the O'Brien affidavit attached to the motion for summary judgment included his sworn statement that this sum represented a fair and reasonable value for his legal services on behalf of Kroh. Neither State Line nor Kleb presented any affidavits or other facts to refute the O'Brien affidavit as to the value of his services.

Neither defendant ever sought leave to file amended answers from June 19, 1972 (the date their answers were filed) to October 6, 1972 (the date of the summary judgment) in order to place this issue or any others which might be involved in the case in clear focus by pleading any *ultimate defensive facts* which they deemed

available to them. Neither did they, as previously pointed out, present evidence of *specific defensive facts* in response to the motion for summary judgment, as permitted under Rule 74.04(e). They state in both their suggestions in the court below and their brief here that they intended to file amended answers "setting up all their defenses in full" but had not done so because, so long as the "question of attorney's fee" was open, a fact issue existed which would require evidence and therefore the trial court "was totally without lawful power to grant a summary judgment" and that such judgment "could not lawfully be granted" and that accordingly defendants "have never given any serious consideration to plaintiff's motion for summary judgment."

 These are not valid reasons since the trial court did have the specific power to grant a summary judgment on all elements of the case upon which there remained no genuine issue of material fact and retain for evidentiary determination any genuine issues as to damages, Rule 74.-04(b), or any other fact issues which were actually and in good faith controverted, Rule 74.04(d). Therefore, State Line and Kleb were in constant and continuing jeopardy of such an interlocutory summary judgment from and after the Kroh motion was filed.

 If any real fact issue remained in this case as to the value of attorney's fee, it became moot, however, when Kroh struck from its petition all allegations concerning and request for *any* attorney's fee. However, State Line and Kleb strongly assert that they thereafter were entitled to plead to the "amended petition" before any judgment could be entered. Rule 55.53 does sanction response to an amended pleading within ten days after amendment "unless the court otherwise orders". State Line and Kleb would undoubtedly have been granted time in which to respond to any new matter injected into the litigation by any amendment to the Kroh petition. But the amendment here involved did not

**14**

raise any new issues which would require an amended answer. It simply struck from the petition the $10,000.00 claim for attorney's fee, abondoned such claim and relieved State Line and Kleb from that liability. Upon this record the case was then in a posture permitting the court to render the summary judgment "forthwith", Rule 74.04(c).

The court below had the right to assume that State Line and Kleb had asserted all of their defenses to Kroh's claim in their answers as required of them under Rule 55.09; Rule 55.10; Stevens v. Fitzpatrick, 218 Mo. 708, 118 S.W. 51, 55 (1909). This is particularly true since no request had been made for almost four months to file amended answers and no affirmative proof of defensive facts had been proffered in answer to the request for admissions or in response to the motion for summary judgment.

■ It is ancient law in this state that no new response to an amended pleading is required where such amendment does not raise new matters. Weigand v. Schrick, 34 Mo. 510 (1864); Bremen Bank v. Umrath, 55 Mo.App. 43 (1893); James v. K.C.P. and G. R.R. Co., 69 Mo.App. 431 (1897); State ex rel. Christine v. Taylor, 200 Mo. App. 333, 206 S.W. 247 (1918); Early v. Smallwood, 302 Mo. 92, 256 S.W. 1053 (1923), or where an amended petition is filed and the original answer on file raises the issues. Scheerer v. Waltner, 225 Mo. App. 837, 29 S.W.2d 193, 195 (1930); Trotter v. Carter, 353 Mo. 708, 183 S.W.2d 898, 901 (1944).

Confining our ruling to the record before us in this case, we hold that the trial court did not abuse its discretion nor commit error in permitting the plaintiff Kroh to amend its petition by striking its claim for attorney's fee and rendering summary judgment.

For the reasons herein stated, the judgment is affirmed.

All concur.