# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
February 11, 2014 Session

## STATE OF TENNESSEE v. LARRY MITCHELL BROOKS

**Appeal from the Circuit Court for Maury County**
**No.  21716      Jim T. Hamilton, Judge**

_____

**No.  M2013-00866-CCA-R3-CD   Filed 06/06/2014**

_____

Appellee, Larry Mitchell Brooks, was indicted by the Maury County Grand Jury for one count of driving under the influence, one count of violation of the open container law, one count of violation of the registration law, one count of violation of financial responsibility law, and one count of failure to maintain control.  Prior to trial, Appellee filed a motion to suppress the blood sample evidence on the basis that the State was unable to provide proper chain of custody for the sample.  After a hearing, the trial court granted the motion to suppress by written order.  The trial court entered an order of nolle prosequi.  The State filed a notice of appeal on the same day that the order of nolle prosequi was entered. After a review of the record and applicable authorities, we determine that Tennessee Code Annotated section 55-10-410 does not require the certificate of the blood draw to include the person who took the blood specimen in order to establish chain of custody and that the evidence at the hearing on the motion to suppress adequately established the chain of custody.  Accordingly, we reverse the grant of the motion to suppress and remand the matter for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Reversed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; and Mike Bottoms, District Attorney General, for the appellant, State of Tennessee.

J. Russell Parkes and Charles M. Molder, Columbia, Tennessee for the appellee, Larry Mitchell Brooks.

**OPINION**

*Factual Background*

Trooper Brad McCauley responded to the scene of a single-vehicle accident on Mooresville Pike in Maury County. As a result, Appellee was indicted for one count of driving under the influence, one count of violation of the open container law, one count of violation of the registration law, one count of violation of financial responsibility law, and one count of failure to maintain control. Prior to trial, Appellee filed a motion to suppress the results of a blood test on the basis that the State could not establish chain of custody.

At the hearing, Trooper McCauley testified. He arrived on the scene of the accident at about 1:00 a.m. to find a white truck that was involved in a crash. Appellee was identified as the driver of the truck. An ambulance was called to the scene. While Appellee was in the back of the ambulance, Trooper McCauley read the implied consent form to Appellee and asked for consent to draw blood. Appellee gave consent and Craig Dyer, one of the emergency responders, drew the blood. Trooper McCauley admitted in his "haste of trying to work the scene" he neglected to have Mr. Dyer sign any of the forms.

Appellee admitted to Trooper McCauley that he was the driver of the truck and that he was drinking earlier in the evening. An open container of alcohol was found in the truck. Appellee did not complete any field sobriety tasks due to injuries received from the wreck.

Trooper McCauley described the procedure for the blood draw. He retrieved a blood alcohol catch kit from his patrol car, opened it, removed the paperwork, and handed the remainder of the collection kit to the emergency medical technician.

At that point, Trooper McCauley physically observed the blood draw. The vials did not leave his presence while the blood draw took place. Once the draw was complete, Trooper McCauley "probably took them back to [his] patrol car, secured them in [his] patrol car, and continued processing the scene of the accident." Trooper McCauley testified that he does not physically touch the blood vials. He allows the technician to place them in the bag and seal it. Trooper McCauley labels the bag and locks it up.

2

That night, when Trooper McCauley left the scene, he went to the emergency room. He found out Appellee was going to Vanderbilt, so he went back to his office and placed the blood in the evidence locker.

At some point during the hearing, counsel for Appellee complained about the delay in receiving discovery. The State admitted that the process had taken a "significant amount of time" but that discovery was received prior to trial.

At the conclusion of the hearing, the trial court granted the motion to suppress. The trial court commented, "there's a proper way[ ] to do things, and I'm not fussing with anybody but, you know, you need to. If you're gonna file a Motion to Suppress it needs to be filed. It needs to be a certain day that we have that hearing and make a ruling on that. So draw an order." On March 11, 2013, the trial court entered an order granting the motion to suppress "due to the chain of custody not being intact." On April 3, 2013, at 11:02 a.m., the State filed a notice of appeal pursuant to Rule 3(c) of the Tennessee Rules of Appellate Procedure.[1] On the same day at 11:48 a.m., the trial court filed a case status order noting that the case shall be "nolle prosequi."

*Analysis*

The first issue we must determine is whether this case is properly before us. Appellee argues that this Court does not have jurisdiction to hear the appeal because initially the State filed a premature notice of appeal, and once the trial court filed a nolle prosequi order, the case against Appellee was dismissed and there was nothing from which the State could appeal.

Procedurally, the State filed a notice of appeal and proceeded to appeal the case as of right pursuant to Rule 3(c) of the Tennessee Rules of Appellate Procedure. The notice of appeal was filed after the grant of the motion to suppress but prior to the entry of the order of nolle prosequi.

Tennessee Rule of Appellate Procedure 3(c) provides as follows:

(c) Availability of Appeal as of Right by the State in Criminal Actions. -- In criminal actions an appeal as of right by the state lies only from an order or judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) the substantive effect of which results in dismissing an indictment, information, or complaint; (2)

---

[1] Appellee filed a motion to dismiss this appeal prior to oral argument. In the motion, Appellee argued that this Court lacked jurisdiction to hear the appeal. This Court denied the motion, directing the parties to brief this issue.

setting aside a verdict of guilty and entering a judgment of acquittal; (3) arresting judgment; (4) granting or refusing to revoke probation; or (5) remanding a child to the juvenile court. The state may also appeal as of right from a final judgment in a habeas corpus, extradition, or post-conviction proceeding, from an order or judgment entered pursuant to Rule 36 or Rule 36.1, Tennessee Rules of Criminal Procedure, and from a final order on a request for expunction.

In *State v. Meeks*, 262 S.W.3d 710 (Tenn. 2008), our supreme court examined the proper route for the State to appeal a trial court's grant of a motion to suppress. The court acknowledged that "the courts and the litigants have been left to work through the application of [Tennessee Rules of Appellate Procedure] 3(c), 9, and 10 to orders granting an accused's motion to suppress or exclude evidence. The results have produced procedural confusion . . . ." *Meeks*, 262 S.W.2d at 719.

In *Meeks*, the supreme court examined whether a trial court's order suppressing evidence creates a situation where the "'substantive effect'" of the order "'results in dismissing an indictment, information, or complaint'" pursuant to Rule 3(c)(1). *Id.* at 718-20. The supreme court then criticized several decisions by this Court "that [held Rule 3] does not require an order dismissing the indictment, information, or complaint as a prerequisite to an appeal." *Id.* at 719. The court stated:

> The Court of Criminal Appeals' interpretation of [Rule 3(c)(1)] misapprehends the plain language of the rule because it overlooks the word "results." The State may appeal as of right from an order suppressing or excluding evidence only when the substantive effect of that order "results" in the dismissal of the indictment, information, or complaint. When used as a verb, the word "result" means "[t]o arise as a consequence, effect, or conclusion from some action, process, etc." or "to end or conclude in a specified manner." 13 Oxford English Dictionary 761 (2d ed. 1989). Thus, to trigger [Rule 3(c)(1) ], the order suppressing or excluding the evidence must produce the entry of an order dismissing an indictment, information, or complaint.

*Id.* at 719-20 (footnote omitted). Thus, our supreme court has made it clear that, in order to necessitate a Rule 3(c)(1) appeal, the dismissal of the case must have actually resulted from a trial court's order.

In this case, the trial court entered an order of nolle prosequi after the State filed the notice of appeal. An order of "[n]olle prosequi is a formal entry upon the record . . . by which" the State dismisses the defendant's charges. *See State v. D'Anna*, 506 S.W.2d

4

200, 202 (Tenn. Crim. App. 1973). Our cases establish that a nolle prosequi is a discharge of the case without a conviction or acquittal. Ordinarily, a nolle prosequi is not a bar to a subsequent prosecution when entered prior to trial, but a defendant cannot be convicted unless the State begins anew the criminal process against the defendant. *See State ex rel. Hobbs v. Murrell*, 93 S.W.2d 628, 630 (Tenn. 1936), *State v. Neely*, 1 S.W.3d 679, 682 (Tenn. Crim. App. 1999); *State v. Moore*, 713 S.W.2d 670, 674-75 (Tenn. Crim. App. 1985); *D'Anna*, 506 S.W.2d at 202.

Looking at the text of Rule 3(c), it is apparent that the entry of a nolle prosequi is not one of the specifically enumerated circumstances upon which an appeal as of right is available to the State. As explained in *Meeks*, the Rules of Appellate Procedure grant the State an appeal as of right when the trial court's pre-trial ruling has the substantive effect of dismissing the charges against a defendant. Tenn. R. App. P. 3(b)(c); *see Meeks*, 262 S.W.3d at 719-20. In this case, the mere grant of the motion to suppress was not, in and of itself, dispositive of the indictment against Appellee. Instead, it was the later entry of the order of nolle prosequi that resulted in the substantive effect of dismissing the indictment against Appellee.

The State filed the notice of appeal prior to the entry of the order of nolle prosequi. Thus, at the time, there was no order in existence that resulted in the substantive effect of dismissing the indictment. However, premature notice of appeal is treated as filed after the entry of the judgment from which the appeal is taken. Tenn. R. App. P. 4(d). Therefore, we conclude that once the trial court entered the order of nolle prosequi, this became a suitable case for a State appeal as of right under Tennessee Rule of Appellate Procedure 3(c), and we will treat and consider the case as such. Moreover, at least two panels of this Court have permitted an appeal by the State after an order of nolle prosequi. *See, e.g. State v. Wade Allen Willis*, No. M2012-01577-CCA-R3-CD, 2013 WL 1645740, at *4 (Tenn. Crim. App., at Nashville, April 17, 2013) (determining State could appeal from a nolle prosequi of indictment resulting from grant of motion to suppress); *State v. Jerry R. Shouse*, No. M2013-00863-CCA-R3-CD, 2014 WL 1572451, at *3 (Tenn. Crim. App. at Nashville, April 21, 2014).

*Grant of Motion to Suppress*

The State argues on appeal that the trial court improperly granted the motion to suppress. Specifically, the State argues that the testimony at the hearing on the motion to suppress contained evidence that "clearly established the chain of custody for [Appellee's] blood sample" and Tennessee Code Annotated section 55-10-410(d)[2] does not require a certificate including the name of the person who drew the blood or evidence

---

[2] Former Tennessee Code Annotated section 55-10-410 was transferred to Tennessee Code Annotated section 55-10-408 by 2013 Public Acts, chapter 154, section 8, which became effective July 1, 2013.

5

of the training or qualifications of the person taking the sample. Appellee disagrees, insisting that the trial court properly granted the motion to suppress.

"This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise." *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "'[t]he prevailing party in the trial court is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence."'" *Id.* (quoting *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998))). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). "However, when the trial court does not set forth its findings of fact upon the record [ ], the appellate court must decide where the preponderance of the evidence lies." *State v. Bobby Killion*, No. E2008-01350-CCA-R3-CD, 2009 WL 1748959, at *13 (Tenn. Crim. App., at Knoxville, June, 22, 2009), *perm. app. denied*, (Tenn. Oct. 26, 2009); *see also Fields v. State*, 40 S.W.3d 450, 457 n.5 (Tenn. 2001); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997). In this case, the trial court failed to place findings of fact on the record. In other words, we must decide where the preponderance of the evidence lies. Moreover, as stated above, the application of the law to the facts is subject to a de novo review, with no presumption of correctness.

Tennessee Code Annotated section 55-10-408 provides the following with regard to blood samples:

> (a) The procurement of a sample of a person's blood for the purpose of conducting a test to determine the alcohol content, drug content, or both, of the blood shall be considered valid if the sample was collected by a person qualified to do so, as listed in § 55-10-406(b)(1), or a person acting at the direction of a medical examiner or other physician holding an unlimited license to practice medicine in Tennessee under procedures established by the department of health.

6

(b) Upon receipt of a specimen forwarded to the director's office for analysis, and the "toxicology request for examination" form, which shall indicate whether or not a breath alcohol test has been administered and the results of that test, the director of the Tennessee bureau of investigation shall have the specimen examined for alcohol concentration, the presence of narcotics or other drugs, or for both alcohol and drugs, if requested by the arresting officer, county medical examiner, or any district attorney general. The office of the director of the Tennessee bureau of investigation shall execute a certificate that indicates the name of the accused, the date, time and *by whom the specimen was received and examined*, and a statement of the alcohol concentration or presence of drugs in the specimen (emphasis supplied).

(c) When a specimen taken in accordance with this section is forwarded for testing to the office of the director of the Tennessee bureau of investigation, a report of the results of this test shall be made and filed in that office, and a copy mailed to the district attorney general for the district where the case arose.

(d) The certificate provided for in this section shall, when duly attested by the director of the Tennessee bureau of investigation or the director's duly appointed representative, be admissible in any court, in any criminal proceeding, as evidence of the facts therein stated, and of the results of the test, if the person taking or causing to be taken the specimen and the person performing the test of the specimen shall be available, if subpoenaed as witnesses, upon demand by either party to the cause, or, when unable to appear as witnesses, shall submit a deposition upon demand by either party to the cause.

Rule 901(a) of the Tennessee Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility [of evidence] is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." The testimony of a witness with knowledge "that a matter is what it is claimed to be" is sufficient. Tenn. R. Evid. 901(b)(1). Once this foundation has been established, the "trier of fact then makes the ultimate decision of whether the item is actually what it purports to be." Cohen et al., *Tennessee Law of Evidence* § 9.01[2][a].

This Court has stated, "As a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody." *State v. Goodman*, 643 S.W.2d 375, 381 (Tenn. Crim. App. 1982). The

purpose of the chain of custody requirement is to "demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." *State v. Braden*, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993). While the State is not required to establish facts which exclude every possibility of tampering, the circumstances established must reasonably assure the identity of the evidence and its integrity. *State v. Ferguson*, 741 S.W.2d 125, 127 (Tenn. Crim. App. 1987). This rule does not require absolute certainty of identification. *Ritter v. State*, 462 S.W.2d 247, 250 (Tenn. Crim. App. 1970). Absent sufficient proof of the chain of custody, however, the "evidence should not be admitted . . . unless both identity and integrity can be demonstrated by other appropriate means." Cohen et al., *Tennessee Law of Evidence* § 9.01[13][c]. A leading treatise on evidence explains:

> The concept of a "chain" of custody recognizes that real evidence may be handled by more than one person between the time it is obtained and the time it is either introduced into evidence or subjected to scientific analysis. Obviously, any of these persons might have the opportunity to tamper with, confuse, misplace, damage, substitute, lose and replace, or otherwise alter the evidence or to observe another doing so. Each person who has custody or control of the evidence during this time is a "link" in the chain of custody. Generally, testimony from each link is needed to verify the authenticity of the evidence and to show that it is what it purports to be. Each link in the chain testifies about when, where, and how possession or control of the evidence was obtained; its condition upon receipt; where the item was kept; how it was safeguarded, if at all; any changes in its condition during possession; and when, where and how it left the witness's possession.

*Id.* The issue addresses itself to the sound discretion of the trial court; its determination will not be disturbed in the absence of a clearly mistaken exercise of such discretion. *State v. Beech*, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987); *State v. Johnson*, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984). "Reasonable assurance, rather than absolute assurance, is the prerequisite for admission." *State v. Kilpatrick*, 52 S.W.3d 81, 87 (Tenn. Crim. App. 2000).

In the past this Court has examined factual scenarios that are similar to the case herein. In *State v. Terry Scott*, No. E2003-00360-CCA-R3-CD, 2003 WL 22326980 (Tenn. Crim. App., at Knoxville, Oct. 9, 2003), the defendant was convicted of DUI. On appeal, he argued that the State failed to prove a proper chain of custody for his blood sample. *Id.* at *1. The defendant was transported to the hospital in an ambulance from the scene of an automobile accident. The police officer was present at the hospital when the blood was drawn and personally packaged and shipped the sample to the TBI. *Id.*

The samples were received by the TBI and logged by an evidence clerk. A special agent with the TBI performed the drug screen. The person who tested the sample at the TBI did not testify. *Id.* This Court determined that the "testimony of [the police officer] and [the TBI evidence clerk] provided the beginning and ending 'links' of the chain. The position of [the technician who tested the sample] was established by [the evidence clerk's] testimony and documented by standard TBI records." *Id.* at *3 (citing *State v. Bobby Wells, Jr.*, No. E2000-01496-CCA-R3-CD, 2001 WL 725305 (Tenn. Crim. App., at Knoxville, June 28, 2001), *perm. app. denied*, (Tenn. Oct. 1, 2001) (finding sufficient chain of custody for admission of drug evidence notwithstanding failure of TBI lab technician who received and logged the evidence to testify)). We determined that the testimony introduced along with the fact that there was no evidence of tampering with the blood samples amounted to a proper basis for the admission of the testing. *Terry Scott*, 2003 WL 22326980, at *3.

Additionally, in another case, this Court determined that the trial court properly admitted the results of the blood alcohol test despite the lack of testimony from the hospital employee who drew the blood from Appellant and the testimony from the TBI employee who received the blood sample at the TBI laboratory. *See State v. Michael Joseph Arbuckle*, No. M2000-2885-CCA-R3-CD, 2001 WL 1545494, at *2-3 (Tenn. Crim. App., at Nashville, Dec. 5, 2001), *perm. app. denied*, (Tenn. May 28, 2002). In *Michael Joseph Arbuckle*, the State presented the testimony of the police officer who observed the blood sample being drawn. *Id.* at *3. The officer was responsible for placing the sample in the evidence locker to be mailed to the TBI. The trial court also heard testimony from the TBI agent regarding the procedure for documenting and receiving blood samples and that there was no evidence of tampering of the blood sample. *Id.* This Court upheld the admission of the blood alcohol test and determined that the State's proof of chain of custody was sufficient. *Id.*

At trial, Trooper McCauley testified that he physically observed the blood draw by a technician named Craig Dyer. The vials did not leave Trooper McCauley's presence while the blood draw took place. One the draw was complete, Trooper McCauley "probably took them back to [his] patrol car, secured them in [his] patrol car, and continued processing the scene of the accident." Troooper McCauley testified that he does not physically touch the blood vials. He allows the technician to place them in the bag and seal it. Trooper McCauley then labeled the bag and locked it up before transporting it to the evidence locker. Dyer did not sign the form. From that point, Trooper McCauley sent the evidence to the Tennessee Bureau of Investigation ("TBI") for testing. No one from the TBI testified at the hearing. We were unable to locate the completed blood test from the TBI in the technical record.

First, we note that Tennessee Code Annotated section 55-10-408(b) does not require, as Appellee argues, the signature of the person completing the blood draw or a certificate that includes the name of the person along with evidence of their qualifications. Rather, it is the person who receives and examines the blood specimen who must complete such a certificate. Tennessee Code Annotated section 55-10-410 sets forth a procedure by which blood may be drawn from a defendant to determine the existence of alcohol or drugs in a defendant's system. The testimony at trial clearly established the chain of custody from the time of the blood draw to the delivery to the TBI. The testimony of Trooper McCauley alone sufficiently established that the blood sample submitted for testing was Appellee's blood and, therefore, the resulting blood alcohol level of the blood could be assumed to be the blood alcohol level of Appellee's blood at that time of the crash. There is no discernable issue with regard to chain of custody in so far as the statute requires. As a result, the trial court erred in granting the motion to suppress. Consequently, the matter is remanded to the trial court for further proceedings consistent with this opinion.

*Conclusion*

For the foregoing reasons, we reverse the grant of the motion to suppress and remand the case to the trial court for further proceedings consistent with this opinion.

_____
JERRY L. SMITH, JUDGE